474 N.W.2d 599 (1991)
In re the Matter of J.L.B., Petitioner, Appellant,
v.
T.E.B., Respondent.
No. C6-91-449.
Court of Appeals of Minnesota.
August 20, 1991.
Review Denied October 11, 1991.
*600 Catherine A. Nixon, Minneapolis, for appellant.
*601 Kathleen Worner Kissoon and Michael D. Dittberner, Kathleen Worner Kissoon Law Office, Bloomington, for respondent.
Candace J. Barr, guardian ad litem, Minneapolis.
Considered and decided by RANDALL, P.J., and HUSPENI and THOREEN,[*] JJ.

OPINION
HUSPENI, Judge.
Appellant mother alleges the trial court erred when it refused to vacate its order approving the parties' lump-sum settlement of a paternity case. We affirm.

FACTS
Appellant J.L.B., age 29, met respondent T.E.B., age 45, in November 1986 and engaged in sexual intercourse with him on or about November 1 and November 10. Medical tests in January 1987 revealed that appellant was ten weeks pregnant. When appellant married R.P.L. on January 24, 1987, R.P.L. knew that appellant was pregnant. When they divorced in May 1988, the judgment and decree provided that R.P.L. was not the child's father.
When the child was born July 29, 1987, appellant listed D.J.L.'s name on the birth certificate as the child's father. D.J.L. has consequently been involved in the child's life, has held himself out as the child's father, and has considered the child his own. In November 1987, appellant filed an allegation of paternity against D.J.L. This matter proceeded to a stipulation establishing temporary support and visitation. The court approved that stipulation and ordered blood tests to determine paternity. The blood test results excluded D.J.L. as the child's biological father.
While the paternity matter involving D.J.L. was still pending, appellant brought this action against respondent in March 1989. The court appointed a guardian ad litem to represent the child's interests in July 1989. Blood tests revealed a 99.99% likelihood that respondent is the child's father. Respondent challenged the accuracy of the test and maintained that he was not the father of the child.
Despite respondent's firm denial of paternity, he offered appellant a lump-sum settlement in order to avoid the publicity, cost and delay which a trial would create. The parties negotiated a $30,000 settlement which, once invested, would produce interest income to assist appellant in raising the child. The principal would become available to the child at age 18 for a college education or at age 22 for the child's full control. As a condition of the settlement, appellant agreed to dismiss with prejudice the paternity action against respondent. In addition, she agreed to withhold respondent's identity from the child until the child becomes of age.
Counsel for both parties and the guardian ad litem took part in the negotiations, scrutinized the agreement and concluded that the settlement was appropriate. Despite the blood test evidence of paternity, appellant and the guardian ad litem admitted such substantial weaknesses in the case that they decided the $30,000 settlement now was better for the child than the expense and emotional turmoil of a trial and the possibility that the jury could decide in respondent's favor. Based on this analysis, the guardian ad litem found the settlement to be in the child's best interest. The parties entered the settlement on the record in November 1990.
At the subsequent court hearing, the Hennepin County Commissioner of Human Services opposed the settlement because he felt it left too many issues unattended (medical coverage, paternity) and left the child unable to approach respondent for an increase in child support, if ever necessary. The trial court approved the settlement over the Commissioner's objection. In its findings and order, the trial court also amended the pleadings to include the Commissioner and child as parties, dismissed the case with prejudice, and dismissed the *602 guardian ad litem from her duties upon entry of the order.
In order to invest the settlement, the guardian ad litem needed the child's social security number. Appellant refused to provide her with that number. After several months of efforts, the guardian ad litem brought a motion to compel appellant to produce the child's social security number. In response to that motion, appellant moved the court to vacate the settlement. These motions were ultimately heard and decided by the same judge who had approved the settlement agreement.
Appellant alleged that respondent coerced her into agreeing to the settlement and that in approving it the court failed to consider the best interests of the child. In addition, appellant has developed Hodgkin's disease and began chemotherapy treatments in October 1990. After a hearing, the trial court granted the motion to produce the child's social security number, denied the motion to vacate, ordered that judgment be entered, and discharged the guardian ad litem upon entry of judgment.

ISSUES
1. Did the trial court err when it refused to vacate its order approving a lumpsum settlement in this paternity action?
2. Did the trial court err in ordering appellant to pay the $250 attorney fees of the guardian ad litem?
3. Should the court grant the guardian ad litem's request for attorney fees and costs incurred in this appeal?

ANALYSIS

I.
Appellant's motion to vacate the order approving the parties' lump-sum settlement was brought pursuant to Minn.R.Civ.P. 60.02(b), (c) and (f). That rule allows the trial court to
relieve a party * * * from a final * * * order * * * and * * * order a new trial or grant such other relief as may be just for the following reasons:
(b) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial pursuant to Rule 59.03;
(c) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
* * * * * *
(f) Any other reason justifying relief from the operation of judgment.
Id. "Vacating an order is a matter vested in a trial court's discretion and will not be overturned absent a clear abuse of that discretion." Johnson v. Hunter, 447 N.W.2d 871, 873 (Minn.1989). We will evaluate each of these grounds in turn.

A. NEW EVIDENCE
Appellant alleges the trial court erred by failing to consider her recent diagnosis of Hodgkin's disease as new evidence to warrant a vacation of the 1990 order. We cannot agree.
In order for relief from judgment to be granted where there is newly discovered evidence, such evidence must be relevant and admissible at trial, must be likely to have an effect on the result of a new trial, and must not be merely collateral, impeaching or cumulative.
Regents of Univ. of Minn. v. Medical Inc., 405 N.W.2d 474, 478 (Minn.App.1987), pet. for rev. denied (Minn. July 15, 1987), cert. denied 484 U.S. 981, 108 S.Ct. 495, 98 L.Ed.2d 494 (1987). Although appellant's diagnosis is "new," it is not new evidence that would be relevant in a trial on the issue of paternity and would not likely affect the result of a new trial.
Respondent argues that appellant's condition is, in fact, a change in circumstances for which rule 60.02 makes no provision. We must agree. The parties made no provision in the settlement for modification upon changed circumstances. When appellant and her attorney negotiated the lumpsum settlement of $30,000, all parties were aware of the finality of that agreement once approved by the court. Further, the three months between the parties' initial negotiation in October and the hearing before *603 the court in January provided appellant an opportunity to evaluate her situation and decide whether to accept the settlement. She made a knowing and willing acceptance of the settlement at the court hearing and only sought vacation of the settlement agreement in response to the request by the guardian ad litem that appellant provide the social security number of the child.
Finally, despite its denial of appellant's vacation motion, the court did express empathy toward appellant's position at the hearing. The transcript reflects that the trial court considered appellant's recent diagnosis and found it insufficient to require a vacation of the settlement agreement. We find no abuse of discretion in the trial court's determination.

B. FRAUD
In order to relieve a party from an order resulting from fraud of an adverse party,
the moving party must establish by clear and convincing evidence that the adverse party engaged in fraud or other misconduct which prevented it from fully and fairly presenting its case.
Regents, 405 N.W.2d at 480.
Appellant argues first that respondent committed fraud by threatening her with a criminal suit. Both parties had the opportunity to raise and argue this issue before the trial court. After consideration, the court found "no evidence of fraud or misconduct" by respondent. That determination is within the trial court's discretion as fact finder and evaluator of weight and credibility of evidence. Sheeran v. Sheeran, 401 N.W.2d 111, 114 (Minn.App.1987).
Next, appellant alleges the guardian ad litem committed fraud when she failed to present blood test evidence to the trial court before the January 1990 hearing. This argument fails on two bases. First, the guardian ad litem was not a party adverse to appellant during the settlement negotiations, and therefore did not come under the fraud provision in rule 60.02. Only when the guardian ad litem brought the motion to compel the social security number of the child did she arguably take an adversarial role with regard to appellant. Second, appellant faults the guardian ad litem for not presenting the blood test results as presumptive evidence of paternity under Minn.Stat. § 257.55, subd. 1(f) (Supp.1989).[1] That statute does not apply to this case, however, because the statute took effect after appellant had commenced this paternity action. "No law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature." Minn.Stat. § 645.21 (1988). Neither the statute nor the procedural history accompanying the amendment demonstrates a clear legislative intent to apply the presumption retroactively.
The trial court properly concluded that appellant failed to present the requisite clear and convincing evidence to sustain the fraud claim.

C. OTHER REASONS JUSTIFYING RELIEF
Relief under [rule 60.02(f)] requires a showing of "extraordinary circumstances," on the basis of a judicial balancing of the need for finality and the need to do justice in the individual case.
Regents, 405 N.W.2d at 481. Here appellant argues the trial court failed to consider the best interests of the child when it denied her motion to vacate. Appellant charges that by allowing the settlement to stand, the court has deprived the child of the right to have paternity determined. Upon review of the trial court record, we find no basis to overturn the trial court's determination.
Minnesota law allows an alleged father to enter an agreement to provide economic support to the child without having *604 paternity determined. Under Minn.Stat. § 257.64, subd. 1(b) (1988),
The court may * * * recommend that the matter be compromised by an agreement among the alleged father, the mother, and the child, in which the father and child relationship is not determined but in which a defined economic obligation is undertaken by the alleged father in favor of the child and, if appropriate, in favor of the mother, subject to approval by the court. In reviewing the obligation undertaken by the alleged father in a compromise agreement, the court shall consider the best interest of the child, in the light of the applicable factors enumerated in section 518.17, subdivision 3, discounted by the improbability * * * of establishing the alleged father's paternity or nonpaternity of the child in a trial of the action.
"In the best interest of the child, a lump sum payment may be ordered in lieu of periodic payments of support." Minn.Stat. § 257.66, subd. 4 (1988). The court may specify that the judgment or order of that lump-sum settlement may not be modified or revoked. Minn.Stat. § 257.68 (1988).
From the outset, appellant, respondent and, most importantly, the child have had legal representation in these proceedings. The guardian ad litem negotiated the settlement with appellant and respondent and recommended the settlement to the trial court for approval. Twice the guardian ad litem stated on the record the reasons behind her conclusion that the lump-sum settlement was in the best interests of this child.
[C]ertainly I have some questions whether or not the [appellant] will prevail in an actual court trial or a jury trial in this matter. * * * There were more significant points brought up during the deposition which is why I tried to institute a settlement because I think it's in the child's best interest that the child have * * * some monies. [Respondent] decided it would be in his best interest to settle this case because he would be having substantial attorney's fees if we had to go through this trial. And I think that [appellant] decided it would be in her best interest due to the emotional strain that this has caused upon her.
* * * * * *
[P]erhaps the most important reason why I think it's [in] this child's best interest is the stress that this has caused on the mother. * * * [S]he understands that this is going to continue for a long period of time if this is not settled. It has an effect on the child and I think the child is in a tender year and the child needs the mother's attention. And I don't think that spending another year and a half on this particular lawsuit is going to benefit the child at all.
While we may agree with appellant that this child has given up much with regard to the right to determine this parental relationship, the child has also gained the certainty of a monetary fund which is available to meet the child's future needs. Appellant, respondent and the guardian ad litem negotiated an arms-length agreement with complete unanimity in October 1989 and reaffirmed the settlement at both the November 1989 and the January 1990 hearings. All three parties were aware of the weaknesses in appellant's paternity action, as was the trial court. Appellant maintained her approval of the settlement even though she was fully informed by her attorney of her right to go to trial and disavow the settlement before the trial court accepted it. When the trial court heard appellant's motion to vacate, the guardian ad litem again argued the appropriateness of the settlement and attested that it served the best interests of the child. We cannot find error in the trial court's exercise of discretion in a case which met statutory settlement requirements and carried a unanimous agreement throughout formation of the settlement.

II.
Appellant next alleges the trial court erred when it ordered her to pay $250 in guardian ad litem fees. We disagree. Under Minn.Stat. § 257.69, subd. 2 (1988),
The court may order * * * guardian ad litem fees * * * to be paid by the parties *605 in proportions and at times determined by the court. The court shall require a party to pay part of the fees of court-appointed counsel according to the party's ability to pay.
The award of attorney fees and expenses at trial is a matter of the court's discretion and will not be disturbed absent an abuse of that discretion. Moberg v. Moberg, 350 N.W.2d 421, 423 (Minn.App. 1984), pet. for rev. denied (Minn. Oct. 16, 1984).
When appellant refused to disclose the child's social security number, the requisite piece of information for investment, the guardian ad litem had to spend extra time and resources to obtain that information. The guardian ad litem thus claimed fees of $500. Ordering appellant to pay $250 in fees, the trial court stated that since respondent had carried the burden of the guardian ad litem's fees in the first stage of litigation, appellant would now carry that burden. This arrangement seems to be a reasonable distribution under the circumstances and was not an abuse of discretion.

III.
The guardian ad litem has now moved for an award of fees incurred on appeal. An award of appellate fees rests within the discretion of this court. Frederiksen v. Frederiksen, 368 N.W.2d 769, 779 (Minn.App.1985). We note that the trial court apportioned the fees between the parties and considered the effect of appellant's Hodgkin's disease on her health, employability and finances when setting the $250 fee award. Weighing the same factors on appeal, we conclude that an award of appellate fees is not warranted here.

DECISION
The trial court did not err in denying appellant's motion to vacate a settlement when the guardian ad litem had specifically considered and protected the best interests of the child and all parties had been represented by counsel, had recognized the weaknesses in proceeding to trial on the issue of paternity, had reached a unanimous agreement, and had reaffirmed the settlement twice before the court. The trial court did not err in ordering appellant to pay $250 in guardian ad litem fees. No fees are awarded on appeal.
Affirmed.
NOTES
[*] Retired judge of the district court, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.
[1] Minn.Stat. § 257.55, subd. 1(f) provides: Evidence of statistical probability of paternity based on blood testing establishes that the likelihood that the man is the father of the child, calculated with a prior probability of no more than 0.5 (50 percent), is 99 percent or greater.