**Rena M. LOSOYA, n/k/a Saldivar, Respondent,**

**Ramsey County, Respondent,**

v.

**Jason RICHARDSON, Appellant.**

**No. C6–98–491.**

Court of Appeals of Minnesota.

Sept. 29, 1998.

█

Susan Gaertner, Ramsey County Attorney, Steven R. Pfaffe, Assistant Ramsey County Attorney, St. Paul, for respondent Ramsey County.

Rena M. Saldivar, St. Paul, pro se respondent.

Carolyn C. Sachs, Mendota; and Daniel S. Kleinberger, St. Paul, for appellant.

James Malaro, St. Paul, guardian ad litem.

Considered and decided by HUSPENI, P.J., and RANDALL and PETERSON, JJ.

## OPINION

RANDALL, Judge.

Appellant argues that, in light of blood tests showing he was not the biological father of respondent mother's child, the district court should have vacated the default paternity judgment adjudicating appellant the child's father. Appellant also moves to strike a portion of respondent county's brief and appendix. We reverse the denial of appellant's motion to vacate the judgment, remand the case, and grant appellant's motion to strike.

## FACTS

Respondent Rena M. Losoya, n/k/a Saldivar, gave birth to a child on June 23, 1982. Saldivar and respondent Ramsey County sued appellant Jason Richardson in paternity in 1993, and Richardson was served with a notice of motion to require blood tests and notice of a hearing. The county has noted that Richardson is the second man Saldivar has named as a potential father of the child. Richardson asserts that Saldivar previously named two other potential fathers. Richardson did not appear at the hearing, the district court later ordered blood tests, and Richardson did not appear for testing. A default

paternity judgment was entered against him in 1995. The default judgment set Richardson's child support obligation.

On January 21, 1997, the county moved for a contempt order against Richardson for failure to pay child support and obtained an order to show cause for contempt. Richardson requested blood tests at the initial contempt hearing on February 25, 1997. Following the hearing, Richardson brought a formal motion for blood tests and to vacate the default judgment. At a hearing on April 18, 1997, the county stated that it would not oppose Richardson's motion for blood tests. The referee ordered Richardson to complete blood tests at his expense and reserved all of the other outstanding motions pending the blood test results. The tests conclusively excluded Richardson as the child's biological father. Richardson immediately renewed his motion to vacate the paternity judgment pursuant to Minn. R. Civ. P. 60.02(f). The referee now denied the motion to vacate. The district court approved the referee's order denying the motion to vacate. Richardson appeals.

### ISSUES

1. Should the district court have granted appellant's motion to vacate a paternity judgment against him?

2. Should appellant's motion to strike be granted?

### ANALYSIS

#### I.

■ Richardson argues that the district court should have vacated the default paternity judgment against him pursuant to Minn. Rule 60.02. Whether to vacate a paternity judgment under Minn. R. Civ. P. 60.02 is discretionary with the district court. *See Wessels v. Swanson*, 289 N.W.2d 469, 470 (Minn.1979) (noting court "did not abuse its discretion in denying defendant's motion [to vacate a paternity judgment under rule 60.02(1) [1]]"). Here, vacation of judgment involves the Minnesota Parentage Act, Minn.

Stat. §§ 257.51–.74 (1996 & Supp.1997). Interpretation of the Parentage Act is a legal question we review "without deference to the trial court's conclusions." *In re Welfare of C.M.G.*, 516 N.W.2d 555, 558 (Minn.App. 1994).

Under rule 60.02, the court may relieve a party from a judgment for:

(a) Mistake, inadvertence, surprise, or excusable neglect;

(b) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial pursuant to Rule 59.03; * * * or

(f) Any other reason justifying relief from the operation of the judgment.

Minn. R. Civ. P. 60.02. A motion under clause (a) or (b) must be brought within one year after a judgment, and all motions under this rule must be brought "within a reasonable time." *Id.*

The referee ruled that Richardson could not obtain relief under clause (f) because relief would have been available to him under clause (a) if he had pleaded his version of the facts in a reasonable time and/or under clause (b) if he had moved for blood tests promptly after learning the judgment had been entered. *See Chapman v. Special Sch. Dist. No. 1*, 454 N.W.2d 921, 924 (Minn.1990) (stating relief under rule 60.02(f) "is available only under exceptional circumstances and then, only if the basis for the motion is other than that specified under (a) and (e)"). Richardson argues that the referee erred as a matter of law by concluding that clause (f) cannot be utilized if the relief sought was available at any time under clause (a) or (b).

■ We need not reach the issue of whether the referee erred in refusing to apply clause (f) because we conclude respondents waived their right to object to vacation of the default judgment. *See Harms v. Independent Sch. Dist. No. 300*, 450 N.W.2d 571, 577 (Minn.1990) (reviewing court may decide issue district court did not rule on if issue is "decisive of the entire controversy" and nei-

---

**1.** The Rule 60.02 clauses, which are currently identified by letters (a)-(f), were formerly identi-

fied by numbers (1)-(6).

ther party is disadvantaged by not having prior ruling; no party is disadvantaged if there are undisputed facts); *see also* Minn. R. Civ.App. P. 103.04 (stating appellate court "may review any other matter as the interest of justice may require").

First, it is true that Richardson failed to respond to the court's original directives and a default judgment was entered against him in 1995. However, it is undisputed that after the 1997 contempt hearing, Richardson moved for an order requiring blood tests and Ramsey County specifically stated that it would *not* oppose his motion.[2] In arguing that Richardson should pay for this belated testing, the county indicated that if testing showed Richardson was not the child's father, Richardson could seek reimbursement for the cost of the test at the same time he sought vacation of the judgment. The county also stated (logically and honestly) that it would not pursue its contempt motion unless the blood tests determined that Richardson was the child's father by stating, "[I]f the blood tests confirm that he is the biological father, the State wishes to have [the contempt] motion heard at the next hearing." (Emphasis added.)

On appeal, Ramsey County argues that Richardson is too late with his motions and the district court should be affirmed. We disagree. A waiver is " 'an intentional relinquishment of a known right' " made apparent from the disclosed facts. *Citizens Nat'l Bank v. Mankato Implement, Inc.,* 441 N.W.2d 483, 487 (Minn.1989) (quoting *Hauenstein & Bermeister, Inc. v. Met–Fab Indus., Inc.,* 320 N.W.2d 886, 892 (Minn. 1982) (emphasis omitted)). In sum, the county waived any standing to argue lateness. The county (a) did not oppose the order for blood tests; (b) did not raising the question of whether Richardson's request or the evidence the tests might produce was timely; (c) stated that if the tests showed that Richardson was not the child's father, Richardson could seek to vacate the paternity judgment

and seek reimbursement for the cost of the tests; (d) suggested it would pursue its contempt motion *only* if the tests showed Richardson was the child's father; and (e) did not challenge the accuracy of the test results excluding Richardson from paternity.

■ After the county agreed to the blood tests, the referee granted Richardson's motion for blood tests. By granting that motion, the referee effectively reopened the paternity action. The district court cannot now say, with a straight face, that Richardson's motion to reopen was untimely. The referee heard Richardson's motion to reopen for blood tests, Ramsey County did not oppose the motion, and the referee granted the motion. With the unopposed court-ordered blood tests now proving conclusively that Richardson is not the child's father, it is contrary to common sense and due process for a district court to now effectively negate the value of those tests by refusing to vacate the default judgment and thereby prevent Richardson from offering the blood tests into evidence.[3]

To its credit, Ramsey County made a decision not to oppose the blood tests and, thus, permitted an accurate paternity determination. The county's decision constituted an intentional relinquishment of its right to challenge Richardson's motion for tests. When the test results revealed that he is not the child's father and Richardson filed a motion to vacate within a week of the test results, the case was now effectively reopened by the court. Richardson's motion to vacate was now timely as a matter of law.

We note that given the nature of blood test results, the exclusion of Richardson as a possible father is absolute, conclusive, and leaves no room for debate. Exclusion is a level of proof higher than preponderance of the evidence, higher than clear and convincing evidence, even higher than proof beyond a reasonable doubt. On this record, it would be tantamount to bad faith and abuse of process to continue any attempt, no matter

---

**2.** Also, Richardson acted diligently after the court allowed the blood tests; he moved to vacate the paternity judgment less than a week after learning the test results.

**3.** At oral argument, both parties seemed to agree that if the default judgment is vacated and the case reopened, with the blood test results not being controverted, it will be pro forma for Richardson to prevail on a motion on the merits.

how feeble, to hold in Richardson as the father and dun him for support of a child everyone now admits is *not* his. Given the emphasis courts today place on *accurate* paternity determinations, given the county's acquiescence in the motion for blood tests, and given the incontrovertibility of this blood test, there should be no further proceedings in this case against Richardson. The United States Supreme Court has stated:

> The private interests implicated here are substantial. Apart from the putative father's pecuniary interest in avoiding a substantial support obligation and liberty interest threatened by the possible sanctions for noncompliance, at issue is the creation of a parent-child relationship. This Court frequently has stressed the importance of familial bonds, whether or not legitimized by marriage, and accorded them constitutional protection. Just as the termination of such bonds demands procedural fairness, so too does their imposition. Through the judicial process, the State properly endeavors to identify the father of a child born out of wedlock and to make him responsible for the child's maintenance. Obviously, both the child and the defendant in a paternity action have a compelling interest in the accuracy of such a determination.

*Little v. Streater*, 452 U.S. 1, 13, 101 S.Ct. 2202, 2209, 68 L.Ed.2d 627 (1981) (citations omitted).[4]

Additionally, we note that there is no prejudice to a child not to have someone named as his father who is not the child's father, who has never acted as the child's father, and who does not want to be named as the child's father. The record lacks evidence of any attachment between Richardson and the child, who is now 16 years old. The child will continue to receive support from the county as a minor.

There is no untoward prejudice to Ramsey County. The county has only a monetary interest here, and denying the county the opportunity to collect child support from a man who it knows is not the child's father does not deny the county any right deserving protection. To Saldivar, as before, she is free to give the county the name of a third or fourth putative father if she wishes.

Our decision follows existing caselaw. In *Wessels*, a default paternity judgment was entered against defendant Swanson, who moved to vacate this judgment. 289 N.W.2d at 469–70. The district court denied his motion. *Id.* at 469. The supreme court noted that because Swanson had provided no reasons for his failure to act with diligence after judgment was entered, rule 60.02(1) was inapplicable. *Id.* at 470. The supreme court remanded, however, to allow for blood testing and concluded that if blood testing provided evidence substantiating Swanson's denial of paternity, relief from the judgment could be obtained through rule 60.02(6). *Id.*; *see also County of Hennepin on Behalf of Bartlow v. Brinkman*, 378 N.W.2d 790, 795 (Minn.1985) (recognizing adjudicated father's failure without excuse to appear for blood tests, but ruling that default paternity judgment should be revoked under rule 60.02(6) if, within 90 days of opinion, blood tests results disproved his paternity).

Neither party argues that Minn.Stat. § 257.57 applies to this case. Minn.Stat. § 257.57, subds. 1, 2, which addresses when a "presumed father" may assert the non-existence of paternity, cannot apply because Richardson has never been the child's "presumed father" under Minn.Stat. § 257.55 and Richardson never stipulated to paternity.

---

4. It is worth noting that the child was not joined in this action. If a child's interests in paternity are not addressed on the merits, the child may bring a separate cause of action. *Johnson v. Hunter*, 447 N.W.2d 871, 877 (Minn.1989); *see also R.B. v.C.S.*, 536 N.W.2d 634, 638 (Minn.App. 1995) ("[T]he results of [an] earlier adjudication [in which the child was not joined] are not determinative as to [the child]."). Conceivably, unless this current paternity judgment (which everyone admits is inaccurate) is vacated, the child could theoretically bring an individual paternity action against another possible father and could theoretically end up with *two adjudicated fathers*. The court system does a great disservice to the parties, to the public, and to itself when it allows or encourages such results; results that do not remotely comport with reality. This court has previously noted that if inconsistent judgments result after a child brings a paternity action, rule 60.02(c) or (f) may be used to vacate the first judgment. *R.B.*, 536 N.W.2d at 638 n. 3.

This decision is in accord with court-recognized virtues of an accurate paternity adjudication. *See Brinkman,* 378 N.W.2d at 794 ("Indeed, all parties—father, mother and child—benefit from rules requiring only the most accurate evidence in parentage suits."); *see also State v. Thomas,* 584 N.W.2d 421 (Minn.App.1998) (affirming paternity adjudication, despite mother's marriage to another man when child was born, where blood tests established 99.99% probability that adjudicated father was child's biological father and excluded former husband as biological father).

## II.

■ Richardson moves to strike both an affidavit in the appendix to the county's brief not contained in the district court record and the portion of the county's brief relying on this affidavit. *See* Minn. R. Civ.App. P. 110.01 (defining record on appeal as documents filed in district court along with exhibits and transcript); *Mitterhauser v. Mitterhauser,* 399 N.W.2d 664, 667 (Minn.App.1987) (stating "any matters not part of the record must be stricken"). The affidavit is not contained in the district court file, and the county does not oppose the motion. The motion to strike is granted.

## DECISION

On this record, the district court abused its discretion by refusing to vacate the admittedly inaccurate paternity judgment against Richardson. Respondents did not object to Richardson's motion for blood tests and thereby waived their right to object to vacation of the judgment. The paternity proceedings were effectively reopened when the referee granted Richardson's unopposed motion and ordered blood tests to determine paternity. That unopposed order for blood tests rendered moot any issue of Richardson's previous failure to respond or take legal action. Because the county does not oppose the motion to strike, and because the affidavit in question is not in the district court file, we grant the motion to strike.

We reverse and remand for further proceedings consistent with this opinion.

**Reversed and remanded; motion granted.**