In re the Matter of Keelia P. TURNER, Respondent,

Ramsey County, Respondent,

v.

Lionel Racquint SUGGS, Appellant.

No. C5–02–360.

Court of Appeals of Minnesota.

Oct. 8, 2002.

John G. Westrick, Tammy L. Merkins, Westrick & McDowall–Nix, P.L.L.P., St. Paul, MN, for appellants.

Susan Gaertner, Ramsey County Attorney, Kristi Swanson Wendorff, Assistant County Attorney, for respondent Ramsey County; and Keelia Turner, St. Paul, MN, pro se respondent.

Considered and decided by G. BARRY ANDERSON, Presiding Judge, TOUSSAINT, Chief Judge, and PARKER, Judge.*

## OPINION

G. BARRY ANDERSON, Judge.

Based on the admission of appellant Lionel Suggs, the district court adjudicated him the father of respondent Keelia Turner's child. Genetic testing later excluded appellant as the child's biological father and appellant moved to vacate the paternity adjudication alleging, among other things, fraud and newly discovered evidence. Without holding an evidentiary hearing, the district court denied appellant's motion, finding that there was no credible evidence that Turner committed fraud on the court or on appellant. On appeal, appellant contends that the genetic tests conclusively show that Turner committed fraud when, in her sworn written and oral statements, she represented that appellant was the father of the child and the only possible father of the child. By notice of review, respondent Ramsey County argues the district court erred by failing to appoint a guardian ad litem for the child and by failing to conduct an evidentiary hearing to address the validity of the genetic tests and the child's best interests. We affirm in part, reverse in part, and remand.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## FACTS

Between August 1994 and May 2000, appellant and Turner, while unmarried, engaged in a sexual relationship. Turner gave birth on August 18, 1995, and informed appellant that he was the child's father. Relying on Turner's unequivocal representations, appellant accepted responsibility for the child, treated the child as his son, and helped care for the child. In May 1997, Turner signed a paternity affidavit stating that there were no other possible fathers of the child. The parties' relationship deteriorated, and, in fall 2000, Ramsey County sought to adjudicate appellant the father of the child and to address custody, support, and visitation issues.

At the hearing, Turner told the court that appellant was the father of the child. Appellant, again relying on Turner's consistent and unequivocal representations regarding the child's paternity, admitted that he was the father and waived his rights to genetic tests and to representation by counsel. The district court found that there were no other presumed fathers of the child and adjudicated appellant the father, ordered him to pay child support and other expenses, and awarded him joint legal custody as well as reasonable visitation.

Subsequent genetic tests of appellant and the child, arranged by appellant, excluded him as the child's biological father. When appellant informed the district court of the test results, the district court suspended appellant's child support obligation. Appellant refused to repeat the tests and moved, in the paternity proceeding, to vacate the paternity adjudication under Minn. R. Civ. P. 60.02 and Minn. Stat. §§ 548.14, 518.145 (2000). The county opposed appellant's motion, arguing that appellant had failed to provide adequate reasons to vacate the paternity adjudication. The county also argued that if appellant's motion was not denied, a guardian ad litem should be appointed for the child and that an evidentiary hearing was required to address the validity of the genetic tests and whether it would be in the child's best interests to vacate the paternity adjudication. Without holding an evidentiary hearing, the district court denied appellant's motion. It concluded that there was no credible evidence that Turner had committed fraud on the court or on appellant. The court noted that Turner has always maintained and continues to maintain that appellant is the only possible father of the child. This appeal followed.

## ISSUES

I. Did the district court err by not appointing a guardian ad litem for the child?

II. May a man adjudicated the father of a child in a paternity proceeding seek to vacate a paternity adjudication under Minn. R. Civ. P. 60.02?

III. Did the district court abuse its discretion when it denied appellant's motion to vacate the adjudication order under Minn. R. Civ. P. 60.02?

IV. May a child's best interests be considered when determining whether to vacate a paternity adjudication?

## ANALYSIS

### I.

Not distinguishing among motions to vacate paternity adjudications, actions to establish the nonexistence of a parent-child relationship presumed under Minn.Stat. § 257.55, subd. 1 (2000), and actions to establish nonpaternity, Ramsey County argues that appellant's motion to vacate the paternity adjudication "is in the nature of

an action to establish nonpaternity" under Minn.Stat. § 257.57, subd. 2 (2000), and therefore the district court should have appointed a guardian ad litem for the child under Minn.Stat. § 257.60(2) (2000).

■ Interpretation of the Parentage Act is a question of law, which we review de novo. *Losoya v. Richardson,* 584 N.W.2d 425, 427 (Minn.App.1998); *R.B. v. C.S.,* 536 N.W.2d 634, 637 (Minn.App.1995). The Parentage Act sets out various circumstances under which a man is legally presumed to be the father of a child. Minn.Stat. § 257.55, subd. 1. Under Minn. Stat. § 257.57, subd. 2, "a man alleged * * * to be the father" of a child born out of wedlock may "bring an action" to declare the nonexistence of a father-child relationship presumed to exist under Minn. Stat. § 257.55, subd. 1. When an action is brought to declare the nonexistence of a father-child relationship, "[t]he child shall be made a party" to the action if the child is a minor. Minn.Stat. § 257.60(2); *see also* Minn.Stat. § 645.44, subd. 16 (2000) (stating that " '[s]hall' is mandatory").

■ Seeking to declare the nonexistence of a father-child relationship is not the same as bringing an action under Minn. Stat. § 257.57, subd. 2, to declare the nonexistence of a father-child relationship presumed to exist under Minn.Stat. § 257.55, subd. 1.[1] *Cf. State ex rel. Brooks v. Braswell,* 474 N.W.2d 346, 350 (Minn.1991) (stating that if former husband obtained vacation of order adjudicating him presumed father of child born during his marriage, he then "could have initiated an action for a declaration of the nonexistence of the father and child relationship").

■ Here, appellant did not seek a determination that a father-child relationship

*presumed* to exist under Minn.Stat. § 257.55 did not, in fact, exist. Nor did he seek a determination that the father-child relationship did not in fact exist. He moved under Minn. R. Civ. P. 60.02(b), (c), (f), and Minn.Stat. §§ 518.145, 548.14 to vacate the paternity *adjudication.* Without more, vacating a paternity *adjudication* does not necessarily destroy the *presumption* of paternity created by Minn. Stat. § 257.55, subd. 1. Thus, had appellant been successful in obtaining a vacation of the paternity adjudication, any presumption of paternity created by Minn.Stat. § 257.55, subd. 1, would still exist. Here, appellant implicitly admits this is the case by candidly acknowledging before the district court and this court that a subsequent paternity action could be brought against him and that, despite the genetic tests purportedly excluding him as the child's biological father, a subsequent paternity action could adjudicate him the father of the child.

Moreover, Minn.Stat. § 257.57, subd. 2, the provision under which the county alleges appellant brought his motion, refers to bringing "an action" to declare the nonexistence of a father-child relationship presumed to exist under Minn.Stat. § 257.55. Here, appellant moved, in the existing paternity proceeding, to vacate the paternity adjudication; he did not bring the separate action required by statute. Also, the "action" allowed by Minn.Stat. § 257.57, subd. 2, must be brought by an "alleged" father. Here, when appellant moved to vacate the paternity adjudication, he had already been *adjudicated* the child's father. Ramsey County cites no authority for the proposition that a man who is adjudicated to be a child's father continues to be the child's "alleged" father under Minn.Stat. § 257.57,

---

1. For purposes of this appeal, we will assume that an attempt to declare the nonexistence of a father-child relationship presumed to exist

under Minn.Stat. § 257.55, subd. 1, would require appointment of a guardian ad litem.

and the Parentage Act suggests otherwise. *See* Minn.Stat. § 257.66, subd. 1 (2000) (stating that adjudications of parentage under the Parentage Act are "determinative for all purposes").

■ Case law explains that if the time for bringing the "action" to declare the non-existence of the father-child relationship presumed to exist by Minn.Stat. § 257.55, subd. 1 has not expired, a denial of paternity can be treated as being "in the nature of a counter claim." *See Braswell,* 474 N.W.2d at 350. Appellant's motion to vacate the paternity adjudication cannot be construed as the counterclaim allowed by case law, however. To bring a counterclaim, a proceeding must be pending and the party asserting the counterclaim must seek relief from an opposing party. *See Black's Law Dictionary* 353 (7th ed.1999) (defining a "counterclaim" as "[a] claim for relief asserted against an opposing party after an original claim has been made"). Here, nothing was pending when appellant moved to vacate the paternity adjudication.

■ Thus, on this record, appellant did not (as assumed by Ramsey County) invoke Minn.Stat. § 257.57, subd. 2. Nor did appellant seek the relief allowed by that provision or use either of the procedural methods allowed for seeking relief under that provision. Indeed, appellant (as an adjudicated father) may not be allowed to even seek relief under that provision. Additionally, actions under Minn.Stat. § 257.57, subd. 2, to declare the nonexistence of the father-child relationship presumed to exist under Minn.Stat. § 257.55, subd. 1, are distinct from actions under Minn.Stat. § 257.60(2) to declare the nonexistence of the father-child relationship. Therefore, we must reject Ramsey County's argument that appellant's motion to vacate the paternity adjudication under Rule 60.02 was "in the nature of an action to establish nonpaternity" under Minn.

Stat. § 257.57, subd. 2, and require appointment of a guardian ad litem under Minn.Stat. § 257.60(2).

## II.

■ Appellant moved to vacate the paternity adjudication on various bases, including Minn. R. Civ. P. 60.02. The Parentage Act provides that a parentage proceeding "is a civil action governed by the rules of civil procedure." Minn.Stat. § 257.65 (2000). A motion in a paternity proceeding to vacate a paternity adjudication is apparently governed by the rules of civil procedure. *See Braswell,* 474 N.W.2d at 350 (stating that proceedings under the Parentage Act are governed by the rules of civil procedure). The Parentage Act, however, also provides that after a judgment is entered, "all" subsequent matters other than custody and visitation are to be decided "in accordance with chapter 518." Minn.Stat. § 257.66, subd. 3 (2000). Chapter 518 includes Minn.Stat. § 518.145, subd. 2 (2000), which addresses relief from existing orders and judgments. Therefore, arguably a motion in a paternity proceeding to vacate a paternity adjudication is subject to Minn.Stat. § 518.145, subd. 2. Case law suggests, however, that a person is not precluded from seeking relief from a paternity adjudication under either provision. *Cf. Peterson v. Eishen,* 512 N.W.2d 338, 341 (Minn.1994) (noting, in context of motion to vacate paternity and support orders for voidness, both rule 60.02 and Minn.Stat. § 518.145, subd. 2 may be used to reopen a void judgment); *Reid v. Strodtman,* 631 N.W.2d 414, 417–18 (Minn.App.2001) (noting the possible application of both rule 60.02 and Minn.Stat. § 518.145, subd. 2 to a support order issued in paternity proceeding).

■ In light of Minn.Stat. § 257.65, *Braswell, Peterson,* and *Reid,* we conclude

that a person may seek to vacate a paternity adjudication under Minn. R. Civ. P. 60.02.[2] Our conclusion is consistent with the apparent limits on the relief available under Minn.Stat. § 518.145, subd. 2, which provides for relief from a "judgment and decree, order, or proceeding under *this chapter.*" (i.e., Chapter 518) (Emphasis added.)

### III.

■ Appellant moved to vacate the paternity adjudication under Minn. R. Civ. P. 60.02(b), alleging newly discovered evidence, 60.02(c) alleging fraud, and 60.02(f) which allows relief for "other reason[s]." The district court denied appellant's motion, finding that (a) when his paternity was adjudicated, there were no other presumed fathers for the child and that Turner had alleged that there were no other possible fathers for the child; (b) genetic tests later excluded appellant from being the child's biological father; (c) even after the genetic tests, Turner continues to maintain that appellant is the only possible father of the child; (d) appellant has held himself out as the child's father since 1995 and is the only father the child has known; (e) appellant indicated that he will seek visitation with the child even if the paternity adjudication is vacated; (f) appellant's motion is apparently financially motivated; (g) there was no credible evidence that Turner committed fraud on appellant or on the court; (h) no credible evidence supports vacating the paternity adjudication; and (i) it is not in the child's best interests to vacate the paternity adjudication. Appellant challenges these determinations.

■ "Whether to vacate a paternity judgment under Minn. R. Civ. P. 60.02 is discretionary with the district court" and we review the district court's decision to deny appellant's motion for an abuse of that discretion. *Losoya v. Richardson,* 584 N.W.2d 425, 427 (Minn.App.1998) (citation omitted). Whether a party has committed fraud or misconduct is within the district court's discretion as the fact finder and evaluator of the weight and credibility of the evidence. *J.L.B. v. T.E.B.,* 474 N.W.2d 599, 603 (Minn.App.1991), *review denied* (Minn. Oct. 11, 1991). We review a district court's findings of fact to determine whether they are clearly erroneous. Minn. R. Civ. P. 52.01.

### A. Fraud

Appellant argues that the genetic tests which exclude him as the child's father show that Turner committed fraud against him when she represented that appellant was the father of the child and the only possible father of the child.

**2.** This court has previously stated that Minn. Stat. § 257.57, subd. 1(b), not Minn.Stat. § 548.14, is the "preemptive sole method available to a party to raise the question of the non-paternity of one presumed to be the natural father of a child." *Clay v. Clay,* 397 N.W.2d 571, 579 (Minn.App.1986), *review denied* (Minn. Feb. 17, 1987). *Clay* however, must be read in context. *See Nadeau v. Melin,* 260 Minn. 369, 375, 110 N.W.2d 29, 34 (1961) ("A decision must be construed in the light of the issue before the court"). In *Clay,* the statement that Minn.Stat. § 257.57, subd. 1(b) is the "sole" method to question paternity was made in the context of a husband's challenge to a paternity adjudication occurring in a dissolution judgment where the challenge was not raised until *after* the period to challenge presumed paternity under Minn. Stat. § 257.57, subd. 1(b) had expired; the husband was essentially attempting to use Minn.Stat. § 548.14 to circumvent the unconditional three-year limitations period in Minn. Stat. § 257.57, subd. 1(b). This court rejected that attempt, noting that under Minn.Stat. § 645.26, a specific statute prevails over a general statute. *Clay,* 397 N.W.2d at 579. Here, however, there is no dissolution judgment and there is no statute of limitations question.

 Fraud by an adverse party may justify relief under Minn. R. Civ. P. 60.02(c), if the party alleging fraud establishes by clear and convincing evidence that the "adverse party engaged in fraud or other misconduct which prevented it from fully and fairly presenting its case." *Regents of Univ. of Minn. v. Medical Inc.*, 405 N.W.2d 474, 480 (Minn.App.1987); *see J.L.B.*, 474 N.W.2d at 603; *cf. Doering v. Doering*, 629 N.W.2d 124, 129–30 (Minn. App.2001) (stating that the standard for reopening dissolution judgment on the basis of fraud under Minn.Stat. § 518.145, subd. 2(3), within one year after the entry of judgment, is ordinary fraud not fraud on the court), *review denied* (Minn. Sept. 11, 2001). The misconduct required by Rule 60.02(c) must not be collateral to, and must affect the ultimate issue(s) of, the case. *See Regents of Univ. of Minn.*, 405 N.W.2d at 480.

It is undisputed that (a) Turner represented to appellant he was the father of the child; (b) as a result, appellant responsibly held the child out as his own and helped care for the child; (c) by affidavit, Turner made a sworn statement in 1997 to Ramsey County stating that appellant was the only possible father of the child; (d) this affidavit was attached to the papers served on appellant to initiate this paternity proceeding; and (e) while under oath at the paternity hearing, Turner unequivocally represented to the court that appellant was the father of the child. The record, however, also contains the results of genetic tests purportedly indicating that appellant cannot be the biological father of the child.

Thus, it is evident *either* that Turner's representations to appellant and her sworn statements to Ramsey County and to the court were false *or* that the genetic tests were defective. Although the district court's order denying appellant's motion to vacate suggests that it implicitly determined that the genetic tests were defective, it made no finding to that effect and, on this record, we cannot determine how such a result was or could be reached; there was no evidentiary hearing and the record lacks any information regarding the genetic tests other than their results.

Moreover, although there is no explicit statement in the record by appellant (as opposed to his counsel, who does so state) that appellant stipulated to being the child's father based on Turner's statements, a close examination of the record not just allows, but *compels* this inference. Therefore, the possible falsity of Turner's statements was not, under *Regents of Univ. of Minn.*, "collateral" to the resolution of the paternity question and we reverse the district court's summary rejection of appellant's request for relief under Minn. R. Civ. P. 60.02(c), and remand for an evidentiary hearing on this issue.

The current proceeding could have been avoided if appellant had sought genetic tests before stipulating on the paternity question. This fact, however, cannot be used to preclude appellant from challenging the paternity adjudication. Turner made a series of statements on which appellant relied in stipulating to paternity, including but not limited to unequivocal, *sworn* statements to Ramsey County that appellant was the only possible father of the child and to the court that appellant *was* the father of the child. When Turner made these sworn statements, she was under oath. Minn.Stat. § 358.07(7), (10) (2000) (statutorily required oaths stating that witnesses must swear to tell the "whole truth" and that affiants must swear to tell the truth).

Given the nature of these sworn statements, to now penalize appellant for not seeking genetic tests before stipulating to paternity is to penalize him for not assum-

ing Turner's *sworn* statements were perjured or otherwise false. To hold that parties must preserve their rights by disbelieving sworn statements relating to the identity of the person with whom a woman conceived a child would result, we conclude, in a judicially mandated atmosphere of distrust and acrimony that is contrary to public policy strongly favoring stipulations in family cases. *See, e.g., Maranda v. Maranda,* 449 N.W.2d 158, 164 (Minn. 1989) (stipulated divorce decrees are favored); *Tomscak v. Tomscak,* 352 N.W.2d 464, 466 (Minn.App.1984) (noting that stipulations are favored).

■■■■ Thus, appellant's failure to seek genetic tests before stipulating to paternity cannot now preclude him from alleging that those tests showed Turner's statements may be false. We also note that because the current record lacks evidence addressing the validity of the genetic tests, the district court's implicit finding that they were invalid is unsupported and we remand for the district court to conduct an evidentiary hearing to address appellant's fraud allegation.

### B. Newly Discovered Evidence

■■■■ Appellant also argues that the genetic tests constitute newly discovered evidence under Rule 60.02(b) entitling him to vacation of the paternity adjudication. Newly discovered evidence must be relevant and admissible at trial and likely to have an effect on the result of a new trial; the evidence must not be merely collateral, impeaching, or cumulative. *Regents of Univ. of Minn.,* 405 N.W.2d at 479–79 (citation omitted). Rule 60.02(b) allows relief for newly discovered evidence that "due diligence" would not have discovered in time to seek a new trial. Due diligence requires a party to employ "reasonable investigation efforts" to find and produce the evidence at trial. *Id.*

■■ As noted above, parties, particularly those to litigation or other proceedings addressing family related rights, are generally entitled to believe the sworn statements of other parties to those proceedings relating to the identity of the person with whom a woman conceived a child. Therefore, appellant's earlier waiver of genetic testing did not constitute a refusal and failure to exercise "due diligence" to seek paternity-related evidence and we reverse the district court's summary rejection of appellant's request under Minn. R. Civ. P. 60.02(b) to vacate the paternity adjudication on the basis of newly discovered evidence. On remand, the district court shall also address this aspect of appellant's motion. *See Regents of Univ. of Minn.,* 405 N.W.2d at 478–79 (addressing vacating judgments under Minn. R. Civ. P. 60.02(b) for newly discovered evidence).

### C. Other Bases Justifying Relief

Minn. R. Civ. P. 60.02(f) may provide relief from a judgment only under "exceptional circumstances" and may only afford a party "relief in those circumstances exclusive of the specific areas addressed by clauses (a) through (e)." *Chapman v. Spec. Sch. Dist. No. 1,* 454 N.W.2d 921, 924 (Minn.1990) (citation omitted); *see also Sommers v. Thomas,* 251 Minn. 461, 466–67, 88 N.W.2d 191, 195–96 (1958).

■■■■ Here, the district court did not address whether appellant's request for relief under Rule 60.02(f) was based on a reason covered by Rule 60.02(a)-(e). Therefore, on remand, the district court shall address whether the basis for appellant's request for relief under Rule 60.02(f) is for something that would allow relief under Rule 60.02(a)-(e) and address the merits of appellant's 60.02(f) request only if its basis is distinct from the bases for

relief under those other provisions of the rule.[3] *Chapman*, 454 N.W.2d at 924; *Clay*, 397 N.W.2d at 578.

## IV.

When denying appellant's motion to vacate the adjudication order, the district court concluded that the interests of the child "are paramount" and that it would not be in the interests of the child to vacate the paternity adjudication. On appeal, appellant and Ramsey County disagree about whether the child's best interests are relevant when deciding whether to vacate the paternity adjudication. Therefore, we must also decide whether, on remand, the district court may again consider the child's best interests.

The objective of paternity proceedings is to correctly identify the biological father of a child. *See Spaeth v. Warren*, 478 N.W.2d 319, 322 (Minn.App.1991), *review denied* (Minn. Jan. 30, 1992). Given that biological paternity is an objective fact, this court has observed that

> neither Minnesota's parentage act nor the [Uniform Parentage Act] suggests that a determination of paternity should include analysis of whether a child's best

interests would be served by the adjudication.

*Id.; see also id.* at 323 (noting that a "child's best interests simply are irrelevant to the biological determination").[4] The failure of a paternity proceeding to attain its *biological* objective, however, does not necessarily render the resulting paternity adjudication *legally* defective. *See generally Clay v. Clay*, 397 N.W.2d 571, 575–79 (Minn.App.1986) (affirming district court's refusal to reopen paternity determination made in dissolution judgment where former husband later produced blood tests showing he was not father of child), *review denied* (Minn. Feb. 17, 1987); *cf. R.B.*, 536 N.W.2d at 635 (stating "[b]iology alone does not give a father a constitutionally protected interests in a paternity determination").

There are obvious and significant differences between adjudicating paternity and seeking to vacate a paternity adjudication, and those differences are especially pronounced for a child whose paternity is at issue. Therefore, that a child's best interests are irrelevant to the determination of the objective fact of biological paternity does not necessarily mean those best interests are irrelevant to the ques-

---

3. Although the crux of appellant's argument is that Turner's allegedly false statements precluded him from presenting his case on the paternity issue, he admits that he could still be adjudicated the child's father. Therefore, we cannot say that this case involves the "grossly unfair" result required by the standard for "fraud on the court." *See Maranda*, 449 N.W.2d at 164 (addressing "fraud on the court"). We therefore affirm the district court's denial of relief on that issue.

4. This is clearly not a case where best-interests analysis may apply to resolve competing considerations in determining paternity between multiple presumed fathers. *See In re Welfare of C.M.G.*, 516 N.W.2d 555, 560 (Minn.App.1994) (stating that "a child's best interests is a valid policy factor in resolving a conflict between competing paternity pre-

sumptions"); *Kelly v. Cataldo*, 488 N.W.2d 822, 826 (Minn.App.1992), *review denied* (Minn. Sept. 15, 1992) (where child is a necessary party to a paternity action or there are competing presumptions of paternity, a guardian ad litem must be appointed and must consider the child's best interests). Nor is it a case with a unique procedural posture, which would take it out of the general rule. *See Murphy v. Myers*, 560 N.W.2d 752, 756 (Minn.App.1997) (district court did not err by considering child's best interests when rejecting biological father's fraud and misrepresentation defenses in paternity action); *Nicholson v. Maack*, 400 N.W.2d 160, 165 (Minn. App.1987) (guardian ad litem must consider the child's best interests before initiating a paternity action on behalf of the child).

tion whether to grant relief from an existing (albeit possibly biologically incorrect) paternity adjudication. A child's best interests, however, are not part of the analysis used to determine whether to grant relief under Rule 60.02. *See, e.g., Finden v. Klaas*, 268 Minn. 268, 271, 128 N.W.2d 748, 750 (1964) (addressing the requirements for relief under Minn. R. Civ. P. 60.02). Additionally, here, appellant's motion to vacate the paternity adjudication is not accompanied by a motion to declare the nonexistence of the father-child relationship or an action to declare the nonexistence of the father-child relationship presumed under Minn.Stat. § 257.55, subd. 1. And appellant admits he may still be adjudicated the child's father. Indeed, appellant's argument is not that he is not the child's legal father but that Turner's arguably false sworn statements should not preclude him from arguing whether he should be the child's father. We therefore hold that, on remand, when determining whether to vacate the paternity adjudication under Minn. R. Civ. P. 60.02, the district court shall not consider the child's best interests.

## DECISION

Appellant's motion to vacate the paternity adjudication is not identical to either an action under Minn.Stat. § 257.57, subd. 2, to declare the nonexistence of the father-child relationship presumed under Minn. Stat. § 257.55, subd. 1, or to declare the nonexistence of the father-child relationship. Therefore, we affirm the district court's refusal to appoint a guardian ad litem for the child. Additionally, because appellant's stipulation to paternity was based on Turner's unequivocal representations and sworn statements, and because the genetic tests call those representations and sworn statements into question, we reverse the district court's summary denial of appellant's motion to vacate and remand

for the district court to hold a evidentiary hearing and to address appellant's motion to vacate based on the evidence adduced at that hearing. We affirm the district court's denial of relief for fraud on the court. We express no opinion on how to decide the remanded questions.

**Affirmed in part, reversed in part, and remanded.**