**Tarah Asbur FRIESON, Appellant,**

v.

**Angela Dawn PAHKALA, Respondent.**

**No. C8–02–708.**

Court of Appeals of Minnesota.

Nov. 19, 2002.

John M. Stuart, State Public Defender, Bradford William Colbert, Assistant State Public Defender, Heidi DeFord, Certified Student Attorney, Minneapolis, MN, for appellant.

Steven C. Pundt, Northstar West, Minneapolis, MN, for respondent.

Considered and decided by GORDON SHUMAKER, Presiding Judge, ROBERT H. SCHUMACHER, Judge, and KLAPHAKE, Judge.

## OPINION

KLAPHAKE, Judge.

Appellant Tarah Frieson challenges an order denying his request for blood tests to determine the paternity of a child born in October 1998 to respondent Angela Dawn Pahkala. Appellant claims that he is the father of the child and seeks to compel respondent and the child to undergo blood tests under Minn.Stat. § 257.62, subd. 1 (2000). Because appellant met the requirements of the statute by filing with the court an affidavit alleging paternity and "setting forth facts that establish the reasonable possibility that there was * * *

the requisite sexual contact between the parties," we reverse and remand.

## FACTS

Appellant executed a paternity petition in August 2000 that was filed with the district court on January 5, 2001. In his petition, appellant alleged that he and respondent had sexual intercourse on December 28, 1997.[1] One week after this petition was filed, respondent and Alan Lee Watt, whom respondent apparently married some time after the child's birth, executed a "Voluntary Recognition of Parentage" form, acknowledging that they are the biological parents of the child.

Appellant thereafter filed an amended petition for paternity. In his amended petition, he alleged that "he had sexual relations with [respondent] during the time that [she] conceived" and that he "believes that he is the father" of the child.

Respondent filed an answer in which she (1) denied that she had sexual relations with appellant during the time the child was conceived; (2) stated that Alan Watt is presumed to be the father of the child because she and Watt acknowledged paternity in a written Recognition of Paternity; and (3) claimed that appellant's paternity petition is not brought in good faith and is not in the child's best interests, as evidenced by appellant's history of violence against her and his other criminal activities. Respondent also submitted copies of two orders for protection that she obtained against appellant in November 1998 and October 1999, after the birth of the child.

Appellant thereafter filed a motion to compel blood tests under Minn.Stat. § 257.62. In support of his motion, he submitted an affidavit in which he alleged that although he and respondent ended their

---

1. Given the child's birth on October 28, 1998, conception probably occurred in mid to late January 1998. Thus, this date is not within the possible conception period.

relationship in November 1997, they still spoke on the telephone and saw each other occasionally. He alleged that on January 27, 1998, he spent the night at her place and they had sexual relations.

Appellant further alleged that he moved to Chicago on February 3, 1998, and learned of respondent's pregnancy in March 1998. He claimed that respondent told him that he was the father and that they resumed their relationship when he returned to Minnesota during the summer of 1998. He further claimed that he visited the child several times in the hospital after the child's birth in October 1998. Appellant explained that respondent obtained the OFP against him in November 1998 after the two had an argument.

Appellant also submitted an affidavit from his mother, who confirmed that appellant moved to Chicago in February 1998 and lived with her for the next seven months. During that time, appellant's mother alleged that respondent called frequently. Appellant's mother further claimed that she saw the child once in late 1998, that the child looks like appellant, and that respondent has implied that appellant is the child's father.

The district court denied appellant's motion to compel blood tests. The court determined that appellant's affidavit failed to establish that he was entitled to blood tests, given his prior inconsistent sworn statement regarding the date of conception, his prior criminal activities, and evidence suggesting that he has abused respondent. The court further cited respondent's denial of sexual contact with appellant during the period of conception and her prior consistent sworn statement on the November 1998 OFP petition on which she chose not to mark the box entitled "have a child in common."

## ISSUE

Is appellant entitled to compel blood or genetic testing to determine paternity because he has met the requirements of Minn.Stat. § 257.62, subd. 1 (2000)?

## ANALYSIS

A party in a paternity action may request blood or genetic tests under the following statute:

> The court or public authority may, and upon request of a party shall, require the child, mother, or alleged father to submit to blood or genetic tests. A mother or alleged father requesting the tests shall file with the court an affidavit either alleging or denying paternity and setting forth facts that establish the reasonable possibility that there was, or was not, the requisite sexual contact between the parties.

Minn.Stat. § 257.62, subd. 1(a) (2000).

The issue here is one of statutory interpretation and presents this court with a question of law subject to de novo review. *In re Welfare of G.L.H.*, 614 N.W.2d 718, 720 (Minn.2000). Minnesota courts have recognized that this statute, which is part of the Minnesota Parentage Act (MPA), "clearly evince[s] that the present public policy of this state is to encourage use of [blood or genetic tests] when paternity is in issue." *Berrisford v. Berrisford*, 322 N.W.2d 742, 745 (Minn.1982).

■ Examination of the plain language of this statute leads us to conclude the mandatory term "shall" requires a district court to compel blood testing once an alleged father files an affidavit setting forth the requisite facts. *See* Minn.Stat. § 645.44, subd. 16 (2000) (" 'Shall' is mandatory."). Thus, the only question before the district court here was whether appellant's affidavit set forth facts to establish a

"reasonable possibility" that there was the requisite sexual contact between the parties.

■ This inquiry does not allow a district court to exercise any discretion and to make credibility determinations; rather, the court is required to assume the truth of the affidavit. *Cf. Nice–Petersen v. Nice–Petersen*, 310 N.W.2d 471, 472 (Minn. 1981) (construing Minn.Stat. § 518.185, which requires party seeking modification of custody to submit affidavit setting forth facts to support modification, as requiring trial court to accept allegations as true and not allow court to make findings based on affidavit). Nor does this inquiry allow a court to consider whether compelling blood tests would be in the child's best interests. *See In re Turner v. Suggs*, 653 N.W.2d 458 (Minn.App. 2002) (agreeing that Minnesota Parentage Act does not require analysis of child's best interest); *Spaeth v. Warren*, 478 N.W.2d 319, 322 (Minn.App.1991) (MPA "does not require a * * * best interests consideration"), *review denied* (Minn. Jan. 30, 1992). Rather, by requiring blood tests if requested by an alleged father who states sufficient facts to establish the possibility of paternity, the statute incorporates a relatively low threshold that accords with the policy of utilizing blood tests in all paternity actions. *See County of Ramsey v. S.M.F.*, 298 N.W.2d 40, 44 (Minn.1980) (stating that "[w]e can imagine no situation in which it would not be in the interest of [the parties to a paternity action] to have blood tests taken.").

Our decision here is entirely consistent with the result reached in *Witso v. Overby*, 627 N.W.2d 63 (Minn.2001). In that case, the alleged or putative father claimed that he was the biological father of the child, but the mother claimed that her husband was the child's biological father. The mother nevertheless acknowledged that she had sexual contact with the putative father during the possible conception period. The district court ordered the blood tests, but certified the question of whether the putative father had standing to compel those tests. On appeal, the supreme court held that the putative father had standing to bring an action to compel the mother and child to undergo blood or genetic testing under Minn.Stat. § 257.62, subd. 1. *Id.* at 69. The court explained:

> Our conclusion does not open the door to unfettered challenges to the sanctity of marriages, family unity and parent-child relationships. By vesting in the courts the safeguard of a judicial determination that a putative father has asserted by affidavit sufficient grounds to determine that sexual contact occurred between him and the child's mother that could reasonably have resulted in the child's conception as provided in Minn. Stat. § 257.62, subd. 1 (2000) additional protection is provided against frivolous claims of paternity and a balance is achieved between the interests in the preservation and protection of familial relationships and the interests of the putative father to establish his paternity.

*Id.* (footnote omitted).

■ Here, appellant has asserted sufficient grounds to establish that sexual contact occurred between him and respondent that could reasonably have resulted in the child's conception. By affidavit, he alleges that he and respondent were sexually involved prior to the period of conception, that they had one sexual contact within the possible period of conception, that he and respondent resumed their relationship after they learned that she was pregnant, and that respondent indicated to appellant

that he is the child's father. Given these allegations, appellant is entitled to blood tests to determine the child's paternity.

## DECISION

We reverse the district court's denial of appellant's motion to compel blood tests and remand for further proceedings consistent with this opinion.

**Reversed and remanded.**

ROBERT H. SCHUMACHER, Judge, dissents and files an opinion.

ROBERT H. SCHUMACHER, Judge (dissenting)

I respectfully dissent. I believe the district court has a duty to examine affidavits submitted under Minn.Stat. § 257.62, subd. 1 (2000), and to examine other factors and circumstances in order to determine in its discretion whether there is a "reasonable possibility" that the requisite sexual contact occurred between the parties. I believe that the supreme court acknowledged this discretion in *Witso* and characterized it as a judicial safeguard against frivolous claims of paternity. *Witso v. Overby,* 627 N.W.2d 63, 69 (Minn. 2001).

The district court here determined that appellant failed to set forth facts to establish a reasonable possibility of the requisite sexual contact between the parties. While the district court is required to assume the truth of an affidavit, it was faced with a type of credibility determination because of respondent's denial of that contact. *Cf. Oreck v. Harvey Homes, Inc.,* 602 N.W.2d 424, 429 (Minn.App.1999), *review denied* (Minn. Jan. 25, 2000). For a number of reasons, the district court found respondent more credible and chose to reject appellant's claim that he and respondent had sexual contact on January 27, 1998.

In particular, the district court found that respondent denied any sexual activity with appellant during the possible conception period and that she "has never wavered in her claim that [appellant] is not the father of this child," as evidenced by her OFP petition on which she chose not to mark the box entitled "have a child in common." The court further found that appellant's "competency as a witness * * * is subject to impeachment not only by his prior inconsistent sworn statement, but his history as a convicted felon." The court finally took notice of the two OFP's and found that appellant "has demonstrated a history of harassing and abusing" respondent and that "[t]here is a real risk of [appellant] using the legal system to continue to harass and frighten [respondent]." These findings demonstrate that the district court properly exercised its discretion when it chose to disbelieve appellant's claim that he and respondent had sexual relations during the possible period of conception.

Because the district court properly examined the record and exercised its discretion, I would affirm its denial of appellant's motion to compel blood tests under Minn. Stat. § 257.62, subd. 1 (2000).