**In re the Matter of Benjamin G. WITSO, Respondent,**

**v.**

**Mary C. OVERBY, et al., Petitioners, Appellants.**

**No. C6–99–1618.**

Supreme Court of Minnesota.

June 7, 2001.

---

John Robinson Hill, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, for appellants.

Susan Anne Daudelin, Walling & Berg, P.A., Minneapolis, for respondent.

## OPINION

STRINGER, Justice.

Respondent Benjamin Witso (Witso) seeks custody and visitation rights with his putative child M.R.O. and petitioned under the Minnesota Parentage Act (MPA)[1] for a court order to compel the child's mother, appellant Mary Overby (Overby), and M.R.O. to undergo blood or genetic testing to determine whether he is a presumed biological father of M.R.O. The district court granted Witso's petition but, on Overby's motion, certified as important and doubtful the following question as recast by the court of appeals:

> Must a paternity action be dismissed for lack of standing when the petitioning putative father shows the requisite sexual contact but has not had genetic testing, which might establish the genetic basis for standing that arises from a positive genetic test?

The court of appeals answered the question in the negative and affirmed the district court. We now affirm the court of appeals.

Overby gave birth to M.R.O. on April 27, 1998. At the time of M.R.O.'s birth Overby was married to James Overby, and therefore, by statute, James Overby is M.R.O.'s presumed biological father. Minn.Stat. § 257.55, subd. 1(a) (2000). Witso alleges however, that he and Overby became involved in a two-year extra-marital affair that included frequent sexual contact during the period in which M.R.O. was conceived and that he is M.R.O.'s biological father. He supports his claim with an affidavit asserting that he and Overby had an intimate relationship over the time period alleged and that Overby admitted that he was M.R.O.'s biological father. Overby's responsive affidavit denies the two-year affair but admits that she and Witso had one sexual encounter that could have resulted in the conception of M.R.O. Overby denies that she told Witso that M.R.O. was his child and contends that she and her husband were trying to have a second child and had frequent sexual contact during the period in which M.R.O. was conceived. Overby maintains that James Overby is M.R.O.'s biological father.

◾ The issue in the certified question is one of statutory interpretation and is therefore a question of law that this court reviews de novo. *In re Welfare of G.L.H.*, 614 N.W.2d 718, 720 (Minn.2000).

The right to bring a proceeding to establish paternity is totally a creature of the MPA. In the MPA the legislature adopted, with some modifications, the Uniform Parentage Act, a comprehensive set of laws designed to provide "substantive legal equality for all children regardless of the marital status of their parents * * * [including] the *sine qua non* of equal rights— the identification of the person against whom these rights may be asserted."[2] The MPA establishes that the father and child relationship may exist regardless of the marital status of the parents. Minn. Stat. §§ 257.52, 257.53 (2000).

◾ The MPA provides the exclusive bases for standing to bring an action to

---

1. The MPA is codified in Minn.Stat. §§ 257.51–.74 (2000).

2. *Unif. Parentage Act,* 1973 Prefatory Note, 9B U.L.A. 289 (1987).

determine paternity. *Morey v. Peppin*, 375 N.W.2d 19, 22 (Minn.1985). Whether and when a person may bring a paternity action depends on which presumptions of paternity, if any, apply. *See* Minn.Stat. § 257.57 (2000). Nine presumptions of paternity are set forth in section 257.55, generally divided between those based on marriage, Minn.Stat. § 257.55, subd. 1(a)-(c) (2000), and those based on circumstances other than marriage, Minn.Stat. § 257.55, subd. 1(d)-(i) (2000). Standing to bring a paternity action with respect to these presumptions is also based on statute.[3]

■ The issue here is whether Witso, a putative father who is not a presumed father under section 257.55, can bring an action to require Overby, the mother, and M.R.O., the putative child, to submit to blood or genetic testing to establish whether he is a presumed father under section 257.55, subd. 1(f) when M.R.O. already has a presumed father. Section 257.55, subd. 1(f) provides that if "blood or genetic test-ing establishes the likelihood that he is the father of the child, calculated with a prior probability of no more than 0.5 (50 percent), is 99 percent or greater" then Witso is presumed to be the biological father. Witso thus seeks to establish a presumption of paternity in himself, and if successful, to proceed ·in district court to seek custody and visitation rights with M.R.O. as provided in Minn.Stat. § 257.541, subd. 2(b) (2000). Whether he is ultimately granted any such rights is not before us.

■ The court of appeals held that Witso is a party to this paternity action under Minn.Stat. § 257.57, subd. 2(1) (2000),[4] and as a party has the right to compel Overby and M.R.O. to submit to blood or genetic testing under Minn.Stat. § 257.62 (2000) [5] by alleging by affidavit sufficient bases for the requisite sexual contact. *Witso v. Overby*, 609 N.W.2d at 621–23. The court expressed concern that its ruling might open the door to casual assertions of paternity but concluded that the affidavit requirement in section 257.62, subdivision

---

3. Standing to bring a paternity action is provided in Minn.Stat. § 257.57, subds. 1–3 (2000). Subdivision 1 provides standing with respect to presumptions based on marriage, subdivision 2 provides standing with respect to presumptions based on evidence other than marriage and subdivision 3 provides standing when there is no presumption.

4. Minnesota Statutes § 257.57, subd. 2 (2000) provides:

> The child, the mother, or * * * a man alleged or alleging himself to be the father, * * * may bring an action: at any time for the purpose of declaring the existence of the father and child relationship presumed under section 257.55, subdivision 1, paragraph (d), (e), (f), (g), or (h), or the nonexistence of the father and child relationship presumed under clause (d) of that subdivision * * *.

The court of appeals states that Minn.Stat. § 257.57, subd. 1(b) limits the time one can use blood or genetic tests to challenge a marriage-based presumption to no more than three years after the child is born. *Witso v.*

*Overby*, 609 N.W.2d 618, 622–23 (Minn.App. 2000). The court is correct in so far as a child, biological mother or presumed father under Minn.Stat. § 257.55, subd. 1(a), (b), or (c) may not use blood or genetic tests to declare the nonexistence of the presumed father's paternity after three years have passed since the child's birth. But that section would not prevent a putative father from bringing an action to declare his competing presumption of paternity.

5. Minnesota Statutes § 257.62, subd. 1(a) provides:

> The court or public authority may, and upon request of a party shall, require the child, mother, or alleged father to submit to blood or genetic tests. A mother or alleged father requesting the tests shall file with the court an affidavit either alleging or denying paternity and setting forth facts that establish the reasonable possibility that there was, or was not, the requisite sexual contact between the parties.

1(a) provided the district court with adequate discretion to determine whether a factual basis exists to reasonably conclude that there was sexual contact sufficient for conception to occur. 609 N.W.2d at 621–23.

The Overbys argue that Witso does not have standing because the phrase "declaring the existence of the father and child relationship presumed" in section 257.57, subdivision 2 requires that Witso have evidence of blood or genetic tests establishing that he is a presumed biological father before he is permitted to commence a paternity action. In effect, the Overbys argue that Witso is foreclosed from bringing an action to conduct blood or genetic tests to determine whether he is a presumed father because he does not possess test results that show he is a presumed father. We disagree, as we do not believe that the legislative scheme posits such a chicken-or-egg dilemma. If a putative father were required to be a presumed father under Minn.Stat. § 257.55, subd. 1(f), the mother could foreclose the putative father from obtaining the test results to prove paternity. Further, the terms "alleged" or "alleging" in section 257.57, subd. 2 providing for who may bring an action would have no meaning independent from the term "presumed," clearly ignoring the important statutory distinction between the terms "alleged" or "alleging" and "presumed."

■ The structure and terminology of section 257.57 also evidence a clear legislative purpose to give putative fathers, in contrast to those already presumed to be fathers under Minn.Stat. § 257.55, subd. 1 (2000), a cause of action to establish a presumption of paternity. On the one hand subdivision 1 protects marriage-based presumptions by strictly limiting those who may directly challenge the existence of a presumption of paternity based on marriage to the child, the *biological* mother and a man *presumed* to be the child's father by virtue of Minn.Stat. § 257.55, subd. 1(a), (b) or (c). Minn.Stat. § 257.57, subd. 1.[6] On the other hand subdivision 2 of section 257.57 expands the category of those eligible to bring an action to declare the existence or nonexistence of the father and child relationship based on evidence outside of a marriage to mothers who are not necessarily biological mothers, a personal representative of the child, public authorities charged with support of the child, a personal representative or parent of the mother or an alleged father if the mother or alleged father has died or is a minor and men *alleged or alleging* themselves to be the father. Minn.Stat. § 257.57, subd. 2. Importantly subdivision 2 is not limited to the class of men who can bring an action under Minn. Stat. § 257.57, subd. 1. Putative fathers alleged and alleging themselves to be fathers, but not necessarily presumed fathers—e.g., Witso—are specifically authorized to bring an action under Minn.Stat. § 257.57, subd. 2 to establish their paternity.[7]

6. Minnesota Statutes § 257.57, subd. 1 provides:
   A child, the child's biological mother, or a man presumed to be the child's father under section 257.55, subdivision 1, paragraph (a), (b), or (c) may bring an action:
   (a) At any time for the purpose of declaring the existence of the father and child relationship presumed under section 257.55, subdivision 1, paragraph (a), (b), or (c);
   * * *.

7. The dissent contends that the use of the word "the" in "the father and son relationship" in section 257.57, subd. 2(1) instead of the word "a" indicates that the statute refers to a specific preexisting presumed relationship. The use of "the" rather than "a" establishes nothing of the kind, as the use of the term "a" would suggest multiple fathers.
   The dissent also seeks to support its position by suggesting that "declare" in "declare the existence of the father and child rela-

That an alleging father need not also be a presumed father is further evident from section 257.60, relating to who may and who must be made a party to a paternity action.[8] The section distinguishes those presumed to be fathers from those alleging themselves to be fathers when it provides that a "man presumed to be a father under section 257.55, or a man who alleges himself to be the father" may bring an action to "declare" the existence of the father-child relationship. Minn.Stat. § 257.60(3) (2000). If a putative father brings a paternity action and the mother denies the existence of the father and child relationship, the section requires the court to make the child a party to the action. *Id.*

Judicial opinions from other jurisdictions have held that putative fathers of children born to women married to other men have protectable interests in establishing their paternity. In Colorado, even before it legislatively adopted a presumption of paternity based on blood or genetic testing similar to Minnesota law, the supreme court held that a putative father was denied his right to equal protection when he was prevented from proving his paternity through blood or genetic tests under the state's parentage act. *R. McG. v. J.W.,* 200 Colo. 345, 615 P.2d 666, 672 (1980). After the presumption was adopted, the Colorado Court of Appeals, citing *R. McG. v. J.W.,* construed its parentage act to give a putative father standing to compel a mother and child to submit to blood or genetic testing. *See In re S.R.H.,* 981 P.2d 199, 202 (Colo.Ct.App.1998), *rev'd on other grounds sub nom., N.A.H. v. S.L.S.,* 9 P.3d 354, 366 (Colo.2000). Five members of the U.S. Supreme Court agreed that a biological father might have "a constitutionally protected interest in his relationship with a child whose mother is married to, and cohabiting with, another man at the time of the child's conception and birth." *Michael H. v. Gerald D.,* 491 U.S. 110, 133, 136, 157, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989) (Stevens, J., concurring in the judgment; Brennan, J., with Marshall and Blackmun, JJ., dissenting; White, J., with Brennan, J., dissenting). Justice Stevens concurred in the judgment denying the putative father an opportunity to establish his paternity only after concluding that under the California statute at issue the putative father "was given a fair opportunity to show that he is [the child's] natural father, that he developed a relationship with her, and that her interests

tionship presumed under section 257.55" in section 257.57, subd. 2(1) must imply the preexistence of a presumption of fatherhood because subdivision 3 uses the word "determine" rather than "declare" in "determine the existence of the father and child relationship with respect to a child who has no presumed father under section 257.55 * * *." Minn.Stat. § 257.57, subd. 3 (2000). The difference in meaning between "declare" and "determine" in this context is de minimis—certainly insufficient to support the dissent's position. First, the definitions of the terms overlap making a distinction based on the dictionary or thesaurus tenuous at best. "Declare" can mean to "make evident or give evidence of"; "determine" can mean "to fix conclusively or authoritatively." Webster's Third New International Dictionary 586, 616. (1961). Second, even assuming that the terms differ in meaning, they are not necessarily mutually exclusive. A determination may be made as part of a declaration of legal rights and status. Finally, unlike the terms "alleged/alleging" and "presumed", the terms "declare" and "determine" are not used in contradistinction to each other in the Parentage Act.

8. Minnesota Statutes § 257.60 (2000) provides: "The child shall be made a party whenever: * * * (3) an action to declare the existence of the father and child relationship is brought by a man presumed to be the father under section 257.55, or a man who alleges to be the father, and the mother of the child denies the existence of the father and child relationship."

would be served by granting him visitation rights." *Id.* at 135–36, 109 S.Ct. 2333.

■ We conclude that a party alleging he is a child's father has standing to bring a paternity action under section 257.57, subdivision 2 to compel blood or genetic testing as provided in section 257.62, subdivision 1 even though he does not at the time the action is commenced possess blood or genetic tests that establish he is the child's presumed father under section 257.55, subdivision 1(f). Witso thus has standing to bring this paternity action.

■ Our conclusion does not open the door to unfettered challenges to the sanctity of marriages, family unity and parent-child relationships. By vesting in the courts the safeguard of a judicial determination that a putative father has asserted by affidavit sufficient grounds to determine that sexual contact occurred between him and the child's mother that could reasonably have resulted in the child's conception as provided in Minn.Stat. § 257.62, subd. 1 (2000) [9] additional protection is provided against frivolous claims of paternity and a balance is achieved between the interests in the preservation and protection of familial relationships and the interests of the putative father to establish his paternity. In any event, here Overby has admitted that she had sexual contact with

Witso that could have resulted in the conception of M.R.O.—thus there is no question that Witso's affidavit alleges sufficient facts establishing requisite sexual contact.

Finally, we note again that even if blood or genetic tests show that Witso is M.R.O.'s presumed biological father under section 257.55, subd. 1(f), James Overby is also a presumed biological father based on his marriage to Overby at the time of M.R.O.'s birth. Section 257.55, subdivision 2 requires the court to weigh the conflicting presumptions, and "the presumption which on the facts is founded on the weightier considerations of policy and logic controls." Minn.Stat. § 257.55, subd. 2 (2000). Thus, even though Witso may establish a presumption of biological fatherhood, whether he should be granted custodial or visitation rights with respect to M.R.O. is for an independent determination later to be made by the district court.[10] We affirm the court of appeals and answer the certified question in the negative.

Affirmed.

LANCASTER, Justice (dissenting).

Because the majority has fundamentally misconstrued the Minnesota Parentage Act and reached a result not contemplated by the statute, I respectfully dissent. As I

---

9. Section 257.62 as originally enacted required the court to order a mother or child to submit to blood or genetic testing upon the request of a party to the action. Minn.Stat. § 257.62, subd. 1 (1980). In 1997 the legislature amended section 257.62, subd. 1 by adding: "A mother or alleged father requesting the tests shall file with the court an affidavit either alleging or denying paternity and setting forth facts that establish the reasonable possibility that there was, or was not, the requisite sexual contact between the parties." Act of May 29, 1997, ch. 203, art. 6, § 21, 1997 Minn. Laws 1587, 1766.

10. The dissent's concern that the court's holding may be abused by a rapist or any man

armed with an affidavit is overstated. The trial court clearly has discretion to determine whether the affidavit meets the statutory requirement in section 257.62, subd. 1. In any event however, it is not for this court to interpret a statute to mean something different than what the legislature clearly intended in order to avoid a potential abuse in a hypothetical circumstance not before the court. As noted above, the statutory framework establishes the putative father's right to obtain blood and genetic testing subject to statutory preconditions, and those preconditions are met in the matter before the court.

read Minn.Stat. § 257.57, subd. 1(a) (2000), Benjamin Witso has no standing to bring a cause of action to challenge James Overby's marital presumption of paternity. Furthermore, absent a presumption in Witso's favor, he cannot bring suit to declare his own paternity under Minn.Stat. § 257.57, subd. 2(1) (2000). Neither Minn. Stat. § 257.60 (2000) (discussing who may be party to an action but not addressing who has standing to bring an action) nor Minn.Stat. § 257.62 (2000) (allowing a party to a paternity suit to request blood testing) changes the fact that Witso does not have standing to bring an action to establish a father and child relationship between himself and M.R.O.

Although Witso allegedly seeks only to declare the existence of his paternity under Minn.Stat. § 257.57, subd. 2, as opposed to challenging Overby's presumption of paternity under section 257.57, subdivision 1, it is necessary to consider both subdivisions to clarify the error in the majority's reading of the statute. Section 257.57, subdivision 1, reads in relevant part:

A child, the child's biological mother, or a man presumed to be the child's father under section 257.55, subdivision 1, paragraph (a), (b), or (c) may bring an action:

* * * *

(b) For the purpose of declaring the nonexistence of the father and child relationship presumed under section 257.55, subdivision 1, paragraph (a), (b), or (c) [only within certain time limitations].

As described by the majority, Minn.Stat. § 257.55, subd. 1(a)-(c), discusses the presumptions of paternity based on marriage. Thus, section 257.57, subdivision 1, allows only "a man presumed to be the father" under a marital presumption to bring suit to declare the nonexistence of his own or another man's marital presumption of paternity. Because Witso has no marital presumption in his favor, he has no standing under subdivision 1 to challenge James Overby's marital presumption.

There is a very clear policy reason for this limitation on the ability to challenge a marital presumption; once a family unit has been established, it is very often in the best interests of the child to leave it undisturbed. *See Michael H. v. Gerald D.*, 491 U.S. 110, 124, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989) ("[T]he institution of the family is deeply rooted in this Nation's history and tradition."); *see also In re Marriage of Ross*, 245 Kan. 591, 783 P.2d 331, 335 (1989) (recognizing, in a UPA state, "the ancient presumption of the legitimacy of a child born in wedlock is one of the strongest presumptions known to the law"); *B.H. v. K.D.*, 506 N.W.2d 368, 376 (N.D.1993) ("[P]arenting and the family unit are important considerations worthy of constitutional protection."). Even if, as the majority implies, an unmarried man like Witso could have a due process interest in a father-child relationship where there is already a presumed father in place, that interest would not arise when he has nothing more than a biological relationship. *See generally Michael H.*, 491 U.S. at 133, 136, 157–58, 109 S.Ct. 2333 (Stevens, J., concurring in judgment; Brennan, J., with Marshall and Blackmun, JJ., dissenting; White, J., dissenting) (agreeing that a biological father might have a constitutionally-protected interest in his relationship with a child whose mother was married to another man at the time the child was born). Rather, "an unwed father's biological link to his child does not, in and of itself, guarantee him a constitutional stake in his relationship with that child, [but] such a link combined with a substantial parent-child relationship will do so." 491 U.S. at 142–43, 109 S.Ct. 2333 (Brennan,

J., with Marshall and Blackmun, JJ., dissenting). Here, the record contains no evidence demonstrating the existence of a "substantial parent-child" relationship. In any event, Witso never raised a due process or equal protection argument and therefore conjecture like that engaged in by the majority today is fruitless.

Minnesota Statutes § 257.57, subd. 2, also does not give Witso standing to bring suit to declare the existence of his own father and child relationship with M.R.O. Subdivision 2 states:

> The child, the mother, or * * * a man alleged or alleging himself to be the father * * * may bring an action:
>
> (1) at any time for the purpose of declaring the existence of the father and child relationship presumed under section 257.55, subdivision 1, paragraph (d), (e), (f), (g), or (h) * * *.

Witso and the majority would have us believe that section 257.57, subdivision 2(1), gives Witso, a man "alleging himself to be the father," standing to obtain blood tests and establish a section 257.55, subdivision 1(f), genetic testing presumption of paternity in himself. But this interpretation ignores the explicit language of section 257.57, subdivision 2, which allows any putative father to bring an action to declare the existence of "*the* father and child relationship presumed under section 257.55." Minn.Stat. § 257.57, subd. 2(1)

(emphasis added). The use of "*the* father and child relationship" instead of "*a* father and child relationship" indicates that the statute is referring to a specific preexisting presumed relationship. Section 257.57, subdivision 2, thereby requires that Witso's genetic testing presumption must have existed before he could have standing to declare the existence of a father and child relationship based on that presumption. Because Witso does not have that preexisting presumption, he has no standing to bring the instant suit.[1]

The majority's characterization of this plain reading interpretation as creating a "chicken-or-egg dilemma" not only glosses over the statutory significance of each section, but also usurps the legislature's rightful role in setting public policy. The majority is wrong, I believe, in failing to acknowledge that important public policies are advanced by Minnesota's legislative adaptation of the UPA. The North Dakota Supreme Court recognized those policies when interpreting North Dakota's parentage statute, which is also based on the UPA and recognizes a paternity presumption based on genetic testing. *B.H. v. K.D.*, 506 N.W.2d at 373–75. Like the present case, *B.H. v. K.D.* involved a man who had no presumptions in his favor but alleged to be the father of a child who already had a presumed father based on a marital presumption. *Id.* at 370. The al-

---

1. This is not to say that a putative father would never have standing to declare the existence of his, or another's, paternity. Section 257.57, subdivision 2, gives any putative father standing to declare the existence or nonexistence of his own paternity if there are preexisting facts—such as a signed recognition of parentage or evidence that the putative father received the child into his home and held the child out as his biological child—indicating the putative father was a presumed father. A putative father without a presumption in his favor could also bring suit if he were seeking to declare the nonexistence of *another man's* presumption of paternity based on that man's blood tests or recognition of parentage. Other portions of the MPA also confirm that a putative father will have standing to bring a paternity suit in certain circumstances. Minn.Stat. § 257.60 (2000) ("The child shall be made a party whenever * * * (3) an action to declare the existence of the father and child relationship is brought by a man presumed to be the father under section 257.55, or a man who alleges to be the father * * *."). The facts of this case do not present one of those circumstances.

leging father moved the district court to order blood tests in order to aid him in proving his paternity. *Id.* Interpreting statutory provisions strikingly similar to those now before this court, the North Dakota Supreme Court held:

> There must be genetic tests already in existence which satisfy the statistical qualifications of the statute. Without the requisite test results, an individual like [the alleging father] cannot bring such an intrusive action, disrupting an established family, hoping that tests ordered by the court will subsequently vest him with standing to proceed. Too much irreparable damage will have occurred to the family in the meantime; the potential for abuse is too great.

*Id.* at 375.

The error of the majority's decision is further shown by Minn.Stat. § 257.57, subd. 3 (2000). Subdivision three permits an action to determine the existence of a father and child relationship when the child has no presumed father. Under subdivision 3, a putative father would not attempt to *"declar* [*e* ] the existence of the father and child relationship presumed under section 257.55" as in subdivisions one or two, but would bring "[a]n action to *determine* the existence of the father and child relationship with respect to a child who has no presumed father under section 257.55." Minn.Stat. § 257.57, subd. 3 (emphasis added). While making much of the difference between "presumed" and "alleged" in the MPA, the majority ignores the differences between "determine" and "declare" as used within section 257.57. A party bringing an action to "declare" the existence of a father and child relationship presumed in section 275.55 seeks to "make known clearly or officially" the preexisting factual presumption. *Roget's 21st Century Thesaurus* 201 (2d ed.1999). In contrast, an action to "determine" the existence of a father and child relationship suggests a process of discovering whether such a relationship; and thus a presumption, exists.[2] *See id.* at 222 (listing "discover" as synonym to "determine," but not listing "declare"). In any event, Witso can bring neither action because in the first instance (under section 257.57, subd. 2(1)) he has no preexisting presumption in his favor, and in the second instance (under section 257.57, subd. 3) a presumed father already exists.[3]

Although the majority attempts to interpret sections 257.60 and 257.62 to support its holding, the majority's reading is again in error. The Overbys accurately point out that the carefully constructed MPA

---

**2.** This distinction is highlighted in other states' parentage acts. In Colorado, for instance, "[a]ny interested party * * * may bring an action at any time for the purpose of *determining* the existence or nonexistence of the father and child relationship" under the nonmarital presumptions. Colo.Rev.Stat. § 19–4–107, subd. 2 (2000) (emphasis added). However, only the mother, child, or presumed father may bring an action to *"declar* [*e* ] the existence." or nonexistence of a father-child relationship under the marital presumptions. *Id.,* subd. 1(a)-(b) (2000).

**3.** Another flaw in the majority's analysis is that it finds no difference between section 257.57, subd. 2(1), and subd. 3; a putative father with no presumptions in his favor and facing no presumptions in another could, without limitation on time or circumstance, bring an action to obtain genetic testing under either subdivision. The problem with this interpretation is, of course, that it renders either subdivision 2(1) or subdivision 3 superfluous in this circumstance despite this court's well-settled practice of assuming that statutes are not extraneous. *See In re Paternity of J.A.V.,* 547 N.W.2d 374, 376 (Minn.1996) ("We are guided by the principle that [statutes governing the parent and child relationship] must be applied in a manner that is internally consistent * * * and assuming that each statutory provision has a purpose.").

sets forth in section 257.57 when a putative father has standing to bring suit; then in section 257.60 when a putative father may be made party to a suit; and, finally, in section 257.62 when a party to a suit may seek genetic testing. The court looks to statutory sections as a whole in construing each part of the statute. *See Lenz v. Coon Creek Watershed Dist.*, 278 Minn. 1, 11–12, 153 N.W.2d 209, 217–18 (1967) (noting that when construing a provision of a statute, courts should look beyond the words of the provision and look to section as a whole); *In re J.A.V.*, 547 N.W.2d at 376 (stating that the adoption, parentage, and termination of parental rights statutes involve a common thread and must be interpreted consistently in conjunction with one another). Minnesota Statutes § 257.60, which states that "each man presumed to be the father under section 257.55, and each man alleged to be the biological father, shall be made parties," does not independently enable putative fathers to single-handedly disrupt the family relationship. Rather, it must be read in conjunction with section 257.57, which limits the situations in which a man without any presumptions in his favor has standing to bring a paternity suit in the first place. Taking sections 257.57 and 257.60 together, it is clear that a putative father, like Witso, could be a party to a suit under section 257.60 without having any presumptions of paternity in his favor,[4] but it does not follow that the putative father automatically has standing to bring suit under section 257.57, subd. 2. As the MPA is written, a putative father must satisfy certain conditions before bringing suit that are not prerequisites for becoming a party to a suit.

Ignoring this distinction, the majority concludes that because Witso is a proper party under its reading of section 257.57, subdivision 2(1), he can seek genetic testing under section 257.62. Section 257.62 states in pertinent part: "The court or public authority may, and upon request *of a party* shall, require the child, mother, or alleged father to submit to blood or genetic tests." Minn. Stat § 257.62, subd. 1(a) (emphasis added). I agree with the majority that only a party to a suit may seek genetic tests, but I cannot agree that Witso is a proper party to the instant suit. Because Witso did not have standing under section 257.57 to bring this suit and because he has not been made a party to a suit brought by another, section 257.62 does not give Witso the right to seek blood testing.

Furthermore, the majority denies that its holding creates the potential for abuse by "open[ing] the door to unfettered challenges to the sanctity of marriage" and asserts that baseless and intrusive paternity challenges will not follow from its holding because section 257.62, subdivision 1, requires a putative father who is requesting genetic tests to file an affidavit alleging facts regarding sexual contact with the mother at the relevant time. Contrary to the majority's assertions, section 257.62 does not provide an adequate safeguard against the very real potential for abuse of today's holding. Any man with an affidavit claiming that he had sexual contact with the mother during the period of conception may, after today's opinion, intrude upon an established family unit. Minn. Stat. § 257.62, subd. 1(a) ("A mother or alleged father requesting the tests shall file with the court an affidavit either alleging or denying paternity and setting forth

---

4. The statute could not be otherwise, of course; if men alleged to be the father could not be parties, no mother or child could ever seek to prove the alleged father's paternity or

ensure that, upon determination of a biological relationship, the responsibilities of fatherhood were enforced.

facts that establish the reasonable possibility that there was, or was not, the requisite sexual contact between the parties."). Although the majority emphasizes that in this case Mary Overby admitted the sexual contact, it is irrelevant under section 257.62 whether the mother admits or denies the contact. *Id.*

Finally, even if the mother admits the sexual contact, the majority's reading, taken to its logical conclusion, would give any man who raped the mother standing to obtain blood tests and therefore assert his paternity of the resulting child.[5] *See* Minn.Stat. § 257.62, subd. 1(a). If the legislature had meant for this statute to create such an intrusive and extreme result, surely it would have stated so explicitly. *See In re J.A.V.*, 547 N.W.2d at 377 (stating that, if the legislature had intended to radically change the parent-child relationship, "it surely would have done so in language of greater clarity than we find here."). *See generally Michael H.*, 491 U.S. at 124 n. 4, 109 S.Ct. 2333 (recognizing the grave problems with giving a rapist a liberty interest in establishing a father and child relationship with a child potentially begotten by rape). Because I cannot see that the legislature intended the result at which the majority arrives, I must dissent.

BLATZ, Chief Justice (dissenting).

I join in the dissent of Justice Lancaster.

RUSSELL A. ANDERSON, Justice (dissenting).

I join in the dissent of Justice Lancaster.

---

**5.** This point was conceded at oral argument.