Jean Ann DORMAN, n/k/a Jean Ann Hammes, Respondent,

Douglas County, Respondent,

v.

James Clifford STEFFEN, Appellant,

David LaVern Dorman, Respondent.

No. C0–02–2274.

Court of Appeals of Minnesota.

July 29, 2003.

Virginia Boever, Boever Law Office, Alexandria, MN, for respondent Hammes.

Joel Paschka, Douglas County Attorney, Alexandria, MN, for respondent Douglas County.

Tracey Lindberg, Tracey Lindberg Law Firm, P.A., Breckenridge, MN, for respondent Dorman.

Ann Carrott, Swenson, Lervick, Syverson, Anderson, Trosvig, Jacobson, P.A., Alexandria, MN, for guardian ad litem and minor child.

Michael J. Dolan, Thornton, Hegg, Reif, Dolan & Bowen, P.A., Alexandria, MN, for appellant.

Considered and decided by KLAPHAKE, Presiding Judge, WILLIS, Judge, and HUDSON, Judge.

## OPINION

HUDSON, Judge.

The district court denied appellant's motion to dismiss the county's paternity action against him for lack of subject matter jurisdiction. Appellant argues that the district court erred because (a) respondent-husband is the presumed father of the child; (b) *Witso v. Overby*, 627 N.W.2d 63 (Minn.2001), *cert. denied*, 534 U.S. 1130, 122 S.Ct. 1069, 151 L.Ed.2d 972 (2002), should not be extended to require him to submit to a blood test; and (c) the disruption to the family unit is against public policy. We affirm.

## FACTS

Just before respondent B.D.'s third birthday, his parentage became the subject of litigation. He was born to respondent Jean Hammes during her marriage to respondent David Dorman. After Hammes filed for dissolution of their marriage but before it was finalized, Dorman filed an affidavit questioning paternity due to B.D.'s physical characteristics. Dorman then obtained a blood test showing that he was not B.D.'s father. Despite motions and stipulations of the parties, the final dissolution decree did not *declare* the non-

existence of Dorman's parent-child relationship with B.D.; however, it did contain findings that Dorman was not B.D.'s biological father and not responsible for B.D.'s support. Dorman's separate action to establish nonpaternity, similarly, failed to result in an adjudication of nonpaternity.

Almost two years later, respondents Hammes and Douglas County, as the public authority chargeable by law with B.D.'s support, brought this action to establish paternity. B.D., through his guardian ad litem, was later joined as a plaintiff under Minn.Stat. § 257.60(3) (2002). As a result of his earlier marriage to Hammes, Dorman was named as a defendant based on his status as presumed father under Minn. Stat. § 257.55, subd. 1(a) (2002). Appellant James Steffen was also named as a defendant based on Hammes' affidavit alleging that he was B.D.'s biological father. Steffen denied that he was the father of B.D.

Commencement of the county's action was the impetus for Dorman and Hammes to move for an amendment to their dissolution order to include a declaration of the nonexistence of Dorman's parent-child relationship. Steffen moved to intervene in the dissolution action to prevent the amendment. Dorman also attempted to consolidate his nonpaternity action with the county's action to establish paternity. The dissolution court denied Steffen's motion to intervene and amended the decree to declare the nonexistence of Dorman's parent-child relationship with B.D.

Steffen then moved for dismissal of the present action by the county to establish paternity. The district court: (1) denied Steffen's motion to dismiss; (2) dismissed Dorman's nonpaternity action; (3) declared the amended dissolution decree void; and (4) ordered Steffen to submit to a blood test. Steffen appeals, arguing that the district court does not have subject matter jurisdiction over the county's action. His efforts to stay the blood testing order were unsuccessful. At oral argument, Steffen's counsel indicated that Steffen has taken the blood tests.

## ISSUE

Did the district court err in its determination that it had subject matter jurisdiction over the county's parentage action naming both the presumed and the alleged fathers as defendants?

## ANALYSIS

Subject matter jurisdiction is conferred on the courts by statute, rule, or other authority. *Kasdan v. Berney,* 587 N.W.2d 319, 322 (Minn.App.1999) (noting subject matter jurisdiction granted only by law). Whether subject matter jurisdiction exists is a question of law, subject to de novo review. *Handicraft Block Ltd. v. City of Minneapolis,* 611 N.W.2d 16, 19 (Minn.2000). Similarly, interpretation of the Minnesota Parentage Act (MPA) is a question of law this court reviews de novo. *R.B. v.C.S.,* 536 N.W.2d 634, 637 (Minn. App.1995).

Appellant Steffen—the alleged father—argues that the county does not have authority to commence a paternity action where a presumed father as a result of marriage already exists. The thrust of his argument is that the county's paternity action naming both Steffen and Dorman will effectively declare the nonexistence of Dorman's paternity even though Dorman, as the presumed father, independently could not obtain a declaration of the nonexistence of the parent-child relationship. We find no merit in Steffen's position.

The MPA sets up procedures to be followed in determining parentage when it is in doubt. Minn.Stat. §§ 257.51–.74 (2002).

It sets up presumptions of parentage, designates who can bring actions and when, and authorizes blood testing. Minn.Stat. §§ 257.55 (2002), .57 (2002), .62 (2002). Notably, it specifically confers jurisdiction of actions brought under the MPA on the district courts. Minn.Stat. § 257.59, subd. 1 (2002).

 Paternity and nonpaternity actions receive distinct treatment under the act. *See State of Georgia ex rel. Brooks v. Braswell,* 474 N.W.2d 346, 349–50 (Minn. 1991). Actions to establish paternity can be brought at any time, while actions to declare the nonexistence of the parent-child relationship are subject to various statutes of limitations. *See, e.g.,* Minn. Stat. § 257.57, subds. 1(a), 1(b), 2(1), 2(2), (3), (4) (2002); *Clay v. Clay,* 397 N.W.2d 571 (Minn.App.1986) (denying motion to reopen dissolution decree regarding parentage after three-year statute of limitations had run and concluding fraud was no defense under MPA), *review denied* (Minn. Feb. 17, 1987). Significant to our analysis here, the mother, child, and "public authority chargeable by law with the support of the child" are expressly authorized to bring an action at any time to declare the existence of the father-child relationship presumed by a blood test. Minn.Stat. § 257.57, subd. 2(1).

Steffen mischaracterizes the county's action as one to declare the nonexistence of Dorman's parental relationship with B.D. But the summons and complaint state that the purpose of the action is to "*establish[]* parentage and support." All of the plaintiffs in the action—the county, the mother, and the child—have a vested interest in establishing paternity. None have requested an accompanying declaration of nonpaternity. Dorman himself has not requested review of the district court's dismissal of his action to establish nonpaternity, and in any event, the statute of limitations has run on commencing such an action. Minn.Stat. § 257.57, subd. 1(b) (limiting presumed fathers by marriage from commencing actions to declare non-existence of relationship later than three years after child's birth). In short, the county's parentage action falls squarely within the statutory framework allowing a "public authority chargeable by law with the support of the child" to bring an action to establish paternity. *Id.,* subd. 2(1).

 Steffen further argues that he cannot be a presumed father based on a blood test until a blood test result exists. He further alleges that the district court has no jurisdiction to compel him to submit to a blood test. Taking Steffen's argument to its logical conclusion, a putative father can avoid a paternity action simply by refusing a blood test despite the mother's allegation that he is the child's biological father.

The Minnesota Supreme Court rejected a similar argument in *Witso v. Overby,* 627 N.W.2d 63 (Minn.2001), *cert. denied,* 534 U.S. 1130, 122 S.Ct. 1069, 151 L.Ed.2d 972 (2002). In a closely divided opinion, the court held that Witso, the man alleging himself to be the father, had standing to bring an action under section 257.57, subdivision 2, to establish the existence of the father-child relationship even though: (1) he did not yet have the blood test results to establish himself as a presumed father pursuant to section 257.55, subdivision 1(f); and (2) a presumed father already existed. *Id.* at 67. The *Witso* court specifically recognized that the act provides a "cause of action to establish a presumption of paternity." *Id.* If a putative father, without blood test results, may bring an action to establish a presumption in himself under Minn.Stat. § 257.57, subd. 2(1), we believe that the county, the child, or the mother may also bring an action to establish a presumption of paternity in the puta-

tive father and may compel him to submit to a blood test to establish that presumption.

Our holding is buttressed by the fact that the child, the mother, and the alleged father are all subject to mandatory blood testing under Minn.Stat. § 257.62, subd. 1 (2002). Indeed, the district court is required, upon the request of a party, to order the child, the mother, or alleged father to submit to blood or genetic testing upon filing of an affidavit that establishes the "reasonable possibility" that sexual contact did or did not occur between the parties. *Id.* Significantly, this statutory mandate is not contingent on the application of presumptions in Minn.Stat. § 257.55 (2002). Here, the mother (Hammes) provided an affidavit alleging that B.D. was born while she was married to Dorman, but that she had engaged in sexual intercourse with Steffen around the date that B.D. was conceived. Based on Hammes' affidavit alleging Steffen's paternity, the court ordered Steffen to submit to a blood test. *See Frieson v. Pahkala,* 653 N.W.2d 199, 202 (Minn.App.2002) (district court takes allegations in affidavit as true in ordering blood test). Moreover, all plaintiffs, including the guardian ad litem of the child, want the blood testing. Under these circumstances, Steffen may not refuse to submit to a blood test in an effort to thwart an action to establish paternity.

Steffen also argues that the court cannot subject him to a blood test because a presumed father still exists. This argument has no support in the statutes or caselaw. The MPA expressly contemplates the possibility of two or more conflicting presumptions arising in the same case. Minn.Stat. § 257.55, subd. 2 (2002); *see Witso,* 627 N.W.2d at 69 (noting that even positive

match by genetic test may not result in desired outcome for Witso because court weighs "conflicting presumptions" by "weightier considerations of policy and logic" (quotation omitted)); *State v. Thomas,* 584 N.W.2d 421, 423 (Minn.App.1998) (holding parentage act anticipates and allows for the possibility of conflicting presumptions of paternity), *review denied* (Minn. Nov. 17, 1998); *In re Paternity of B.J.H.,* 573 N.W.2d 99, 101 (Minn.App. 1998) (resolving paternity where husband presumed father by marriage and paramour presumed father by blood test). In such cases, the court determines which presumption is founded on the "weightier considerations of policy and logic." Minn. Stat. § 257.55, subd. 2. Thus, the competing presumptions will properly be decided by the district court.

Steffen's public policy arguments similarly lack merit. He argues primarily that he, an unwilling father, should not be thrust into this paternity matter, especially since the MPA, with its marriage-based presumption, is designed to promote stability within the marriage and family unit. First, none of the "family" members opposes this action to determine if Steffen is the biological father. In fact, the child argues that he may commence his own action against Steffen if the county's action is dismissed.[1] Second, caselaw indicates that no one presumption is more compelling or weightier than another. *B.J.H.,* 573 N.W.2d at 102–03 (rejecting argument that "stability" should be favored over other considerations); *Kelly v. Cataldo,* 488 N.W.2d 822, 827 (Minn.App.1992) (discussing many considerations involved in determining paternity), *review denied* (Minn. Sept. 15, 1992). Third, the "family" and marriage that

---

1. Pursuant to Minn.Stat. § 257.57, subd. 2(1), B.D. can bring an action to declare the existence of the parent-child relationship "at any time" based on a presumption due to blood or genetic testing.

Steffen urges this court to protect and preserve was dissolved years ago. *See Thomas,* 584 N.W.2d at 425 (noting that marriage leading to marital presumption was dissolved leaving preservation of family unit of minimal consequence). Fourth, Steffen's policy arguments ignore the fact that the establishment of the parent-and-child relationship is a critical, fundamental right of a child. *See Johnson v. Hunter,* 447 N.W.2d 871, 876 (Minn.1989) (stating "[e]stablishment of the parent-child relationship is the most fundamental right a child possesses * * *." (quotation and citation omitted)). Furthermore, the child has "distinct and separate" interests from the parents, including inheritance, medical support, causes of action, workers' compensation dependent's allowances and veteran's education benefits. *Id.* at 875.

On these facts, we believe *Witso* is dispositive and the county was authorized to bring its parentage action pursuant to section 257.57, subd. 2(1).

## DECISION

As a public authority chargeable by law with the support of the child, Douglas County was authorized pursuant to Minn. Stat. § 257.57, subd. 2(1), to bring an action against appellant Steffen to establish paternity prior to obtaining blood tests confirming his presumed paternity. Further, the Minnesota Parentage Act expressly contemplates the possibility of two or more conflicting presumptions; thus the existence of a presumed father by marriage does not preclude the public authority chargeable by law with the support of the child from commencing an action to establish paternity of someone other than the presumed father. The district court had subject matter jurisdiction of the county's parentage action pursuant to Minn.Stat. § 257.59, subd. 1. For all of these reasons, the district court properly denied appellant's motion to dismiss for lack of subject matter jurisdiction.

**Affirmed.**