In re the Matter of Raymond Curtis ZENTZ, Respondent,

v.

Cassandra Marie GRABER, Appellant.

No. A08–0141.

Court of Appeals of Minnesota.

Jan. 27, 2009.

Robert A. Howard, Hicken, Scott, Howard & Anderson, P.A., Anoka, MN, and Sherri D. Hawley, Coon Rapids, MN, for respondent.

Elizabeth A. Mikesell, Michael H. Frazier, James C.W. Bock, Bock & Battina, L.L.P., Minneapolis, MN, for appellant.

Considered and decided by SCHELLHAS, Presiding Judge; MINGE, Judge; and JOHNSON, Judge.

## OPINION

SCHELLHAS, Judge.

Appellant challenges the district court's order that respondent has standing to bring a paternity action, arguing that respondent is not a presumed father and therefore does not have standing to bring a paternity action. We disagree and affirm. We also conclude that respondent is entitled to an award of conduct-based attorney fees because appellant has unreasonably contributed to the length and expense of these proceedings.

## FACTS

Respondent Raymond Curtis Zentz (Zentz) commenced this paternity action by filing a complaint alleging that: he is the father of A.C.Z., a male child born August 5, 2003; he and A.C.Z.'s mother, appellant Cassandra Marie Graber (Graber), had sexual intercourse at a time when A.C.Z. could have been conceived; he was not married to Graber when A.C.Z. was born or within 280 days preceding A.C.Z.'s birth; A.C.Z. bears his surname; and his name appears on A.C.Z.'s birth certificate. In his complaint, Zentz sought to be adjudicated the father of A.C.Z.

Graber admitted in her answer that A.C.Z. bears Zentz's surname and Zentz's name appears on A.C.Z.'s birth certificate, but she stated that she was without sufficient information to admit or deny that Zentz is A.C.Z.'s father and requested that the court deny Zentz's request for relief, order genetic testing, and order other relief if genetic testing proved Zentz's paternity.

Zentz moved the district court for temporary relief based on a supporting affidavit in which he asserted that: since A.C.Z.'s birth, Zentz has held himself out to be A.C.Z.'s father; Graber had always acknowledged that Zentz is A.C.Z.'s fa-

ther; Zentz and Graber lived together with A.C.Z. for nearly two years after the child's birth until they separated in June 2005; since their separation, Graber has allowed Zentz sporadic contact with A.C.Z. roughly twice per week and usually in Graber's presence in her home; Graber has not allowed Zentz to take A.C.Z. to his own home; and Zentz has provided medical and dental insurance for A.C.Z. since A.C.Z.'s birth.

Graber filed a responsive motion, supporting affidavit, and amended answer. In her amended answer, Graber alleged that she was married to James Graber when A.C.Z. was conceived and born and that she divorced him roughly 11 months after A.C.Z.'s birth. In her affidavit, Graber asserted that: she and Zentz "did have a relationship" while she was married to James Graber; Zentz never executed a Recognition of Parentage; she and Zentz never married or attempted to marry; and Zentz was listed as the father on A.C.Z.'s birth certificate because "we did have a relationship at our [sic] about the time of [the child's] birth and because [Zentz] believed he was [the child's] father"; acknowledged that Zentz and A.C.Z. developed "a bit of a relationship" before the parties broke up; and opposed Zentz's adjudication as A.C.Z.'s father. Graber argued, among other things, that A.C.Z. has only one presumed father—her ex-husband.

At a hearing on November 28, 2007, Zentz argued that both he and Graber's ex-husband are presumed fathers. Zentz argued that he is a presumed father because he received A.C.Z. in his home and openly held him out as his biological child. Graber argued that Zentz must overcome her ex-husband's presumption of paternity to gain standing, that Zentz had only three years to bring an action to rebut her ex-husband's presumption, and that because

more than three years had passed, Zentz lacked standing to bring a paternity action. Graber also argued that fact questions exist about whether Zentz received A.C.Z. into his home or held A.C.Z. out as his own child.

The district court concluded, in part, that

5. [Zentz] is a man alleging himself to be the father of the minor child; and alleging that he has received the child into his home and openly held the child out as his biological child. Therefore, [Zentz] has standing under Minnesota Statute 257.57, Subdivision 2, to bring an action to declare the existence of the father child relationship.

6. [Zentz's] November 8, 2007 Affidavit sets forth facts that allege his paternity, and that establish the reasonable possibility that there was the requisite sexual contact between the Plaintiff and Defendant. Therefore pursuant to Minnesota Statute 257.72, Subdivision 1, upon [Zentz's] request the court is required to order genetic testing of [Zentz], [Graber], and [A.C.Z.].

The court ordered genetic testing and reserved ruling on the remainder of the parties' motions pending the results of genetic testing. This appeal follows.

## ISSUES

I. Did the district court err when it concluded that because Zentz alleged that he received A.C.Z. into his home and held A.C.Z. out as his biological child, he is a presumed father under Minn.Stat. § 257.55, subd. 1(d), and therefore has standing to bring a paternity suit under Minn.Stat. § 257.57, subd. 2(1)?

II. Should Zentz be awarded conduct-based attorney fees on appeal?

## ANALYSIS

Graber argues that the district court incorrectly concluded that Zentz has standing to assert paternity and that public policy and A.C.Z.'s best interests support a conclusion that Zentz lacks standing to bring a paternity action. Zentz argues that the district court's judgment should be affirmed and seeks attorney fees on appeal.

## I.

 "[I]nterpretation of the Minnesota Parentage Act (MPA) is a question of law this court reviews de novo." *Dorman v. Steffen,* 666 N.W.2d 409, 411 (Minn.App. 2003). "The right to bring a proceeding to establish paternity is totally a creature of the MPA." *Witso v. Overby,* 627 N.W.2d 63, 65 (Minn.2001). Standing to bring a paternity action is therefore an issue of statutory interpretation reviewed de novo. *Id.* at 65–66.

 "Whether and when a person may bring a paternity action depends on which presumptions of paternity, if any, apply." *Id.* at 66. "Nine presumptions of paternity are set forth in section 257.55, generally divided between those based on marriage," found in paragraphs (a)-(c) of subdivision 1, "and those based on circumstances other than marriage," found in paragraphs (d)-(i) of subdivision 1. *Id.* "Standing to bring a paternity action with respect to these presumptions is also based on statute." *Id.* "Standing to bring a paternity action is provided in Minn.Stat. § 257.57, subds. 1–3 . . . ." *Id.* at 66 n. 3. "Subdivision 1 provides standing with respect to presumptions based on marriage, subdivision 2 provides standing with respect to presumptions based on evidence other than marriage and subdivision 3 pro-

vides standing when there is no presumption." *Id.*

Zentz alleges that he is a presumed father under Minn.Stat. § 257.55, subd. 1(d) (2006), which states that a man is a presumed father of a child if he receives a child into his home and openly holds the child out to be his biological child. Zentz argues that he has standing under Minn. Stat. § 257.57, subd. 2(1) (2006), which provides that a man alleging himself to be a father may bring a suit at any time to declare the existence of a father-and-child relationship presumed under Minn.Stat. § 257.55, subd. 1(d). The district court concluded that Zentz has standing under Minn.Stat. § 257.57, subd. 2(1), because he alleged himself to be the father, alleged that he had received A.C.Z. into his home, and held A.C.Z. out as his biological child.

Graber makes several arguments contesting the district court's order. Graber argues that (1) the case must be dismissed because indispensible parties have not been joined; (2) Zentz must rebut Graber's ex-husband's presumption of paternity to gain standing; (3) a man cannot be a presumed father under Minn.Stat. § 257.55, subd. 1(d), based on disputed allegations; and (4) even if Zentz has standing under the MPA, he should be denied standing because it would serve public policy and A.C.Z.'s best interests. Graber argues that allowing Zentz standing would, among other things, deny due process to her ex-husband, A.C.Z., and her.

### Necessary Parties

Graber argues that Zentz's paternity action should be dismissed because Zentz did not join her ex-husband and A.C.Z. as parties. Graber argues that her ex-husband and A.C.Z. are "indispensible" parties[1] because Minn.Stat. § 257.60 (2006)

---

1. We believe that "necessary" is the correct term for the parties who Graber argues must

requires that (1) each presumed father be made a party, unless the court lacks jurisdiction over the presumed father, in which case notice to him is sufficient; and (2) the child be joined as a party if the mother denies the existence of a father-and-child relationship.

The argument for dismissal is unavailing. Graber's answer does not deny the existence of the father-and-child relationship; it merely states that Graber is without sufficient information to admit or deny paternity. The record reflects that Graber's ex-husband lives in Florida but contains nothing about whether the district court could obtain jurisdiction over him or whether notice to him would be appropriate. Moreover, Graber has not demonstrated that dismissal is the proper remedy because joinder may be considered at a later stage of proceedings. *See, e.g., Kelly v. Cataldo,* 488 N.W.2d 822, 826 (Minn. App.1992) (remanding for joinder of a child where the child was a necessary party under Minn.Stat. § 257.60), *review denied* (Minn. Sept. 15, 1992). We conclude that the district court did not err by deciding that Zentz has standing before addressing the joinder of necessary parties. *But see id.* at 828 (concluding, under "the circumstances of this case," that joinder should be addressed before standing). On remand, the district court can address whether there are any necessary parties who must be joined.

### Ex-husband's Presumption of Paternity

Graber argues that Zentz must rebut her ex-husband's presumption of paternity

to "gain" standing. This argument is contrary to precedent.

Competing presumptions are resolved by the district court when it determines which presumed father should be the adjudicated father, not at the outset of a paternity action as a matter of standing. *See Witso,* 627 N.W.2d at 69 (stating that the district court would have to resolve competing presumptions before determining if one presumed father should have custodial or visitation rights); *In re Welfare of C.M.G.,* 516 N.W.2d 555, 560–61 (Minn.App.1994) (stating that district courts should determine which presumption "should lead to a declaration of paternity" by examining the facts of the case and considering the best interests of the child). Competing presumptions are resolved as part of the merits of a case even where one presumption has become irrebuttable. *See C.M.G.,* 516 N.W.2d at 560 (concluding that irrebuttable presumption does not control over rebuttal presumption of paternity). In addition, actions to declare the existence of a relationship are distinct from actions to declare the non-existence of a relationship and are thus not controlled by the time limitations placed on actions to declare the non-existence of a relationship. *C.M.G.,* 516 N.W.2d at 559. This rule ensures "that a paternity determination will be based on a child's best interests rather than a mechanical statute of limitations." *Id.* at 560. Under *C.M.G.,* to ensure that the paternity determination

be joined. Under Minn. R. Civ. P. 19.01, certain persons should be joined if feasible. These parties are referred to as necessary parties. *See United States ex. rel. Hall v. Tribal Dev. Corp.,* 100 F.3d 476, 478 (7th Cir. 1996) (equating "necessary party" with a person to be joined if feasible). If a necessary party under rule 19.01 cannot be made a party, then the court determines if the party is "indispensible" such that the action should be

dismissed. Minn. R. Civ. P. 19.02. But here, joinder is not under rule 19, it is under Minn. Stat. § 257.60. And, in cases addressing joinder of parties under Minn.Stat. § 257.60, courts have used the term "necessary," not "indispensible." *See, e.g., Kelly v. Cataldo,* 488 N.W.2d 822, 825 n. 4 (Minn.App.1992) (referring to party that must be joined under Minn.Stat. § 257.60 as a "necessary" party), *review denied* (Minn. Sept. 15, 1992).

is based on A.C.Z.'s best interests, Zentz and Graber's ex-husband's competing presumptions of paternity should be resolved when the district court determines whom to adjudicate as the father, not as a matter of standing.

### Evidentiary Burden

Graber next argues that the law requires that Zentz establish his presumption of paternity by clear and convincing evidence. But the statute imposes no evidentiary burden on a father attempting to show he is a presumed father under Minn. Stat. § 257.55, subd. 1(d). Graber argues that the evidentiary burden is imposed under Minn.Stat. § 257.55, subd. 2, which requires clear and convincing evidence to rebut a presumption of paternity. Graber's reliance on this section is misplaced. Section 257.55, subdivision 2, applies only to rebutting a presumption, not to establishing a presumption. And Graber cites no other authority for her argument that clear and convincing evidence is required to establish a presumption of paternity.

■ We reject Graber's argument that Zentz lacks standing because the district court did not determine that he demonstrated by clear and convincing evidence that he received A.C.Z. into his home and held A.C.Z. out as his biological child. Zentz's allegations that he lived with the mother and A.C.Z. and consistently held out A.C.Z. as his biological child were sufficient to establish that he is a presumed father under Minn.Stat. § 257.55, subd. 1(d). See Larson v. Schmidt, 400 N.W.2d 131, 134 (Minn.App.1987) (approving of California caselaw that concluded that a father receives a child into his home when he lives with the child or accepts the child into his home for temporary visits); Spaeth v. Warren, 478 N.W.2d 319, 322 (Minn.App.1991), review denied (Minn. Jan. 30, 1992) (concluding that a man had

not held child out as his own where he pursued an adoption rather than a paternity action, the child did not bear his surname, and he took "no action to assert paternity at any time"); Pierce v. Pierce, 374 N.W.2d 450, 451–52 (Minn.App.1985), review denied (Minn. Nov. 4, 1985) (concluding that a man did not hold child out as his biological child where, among other things, he conceded he was not sure the child was his).

### Due Process

■ Graber argues that allowing Zentz standing without an evidentiary hearing denies her ex-husband, A.C.Z., and her due process. Graber has not established that her due-process rights were violated and has not established that she may assert the due-process rights of her ex-husband or A.C.Z. To establish a due-process violation, a party must establish that she is finally deprived of a property or liberty interest without appropriate process. Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). Graber has not established that allowing Zentz standing finally deprives her of anything. Graber has also failed to address the factors considered in determining whether appropriate process was provided. See Baker v. Baker, 494 N.W.2d 282, 287 (Minn.1992) (stating that the "main factors to consider are: (1) the private interests to be affected by the official action; (2) the risk of erroneous deprivation of these interests and the probable value of additional safeguards; and (3) the government interests involved"). Graber's due-process arguments therefore fail.

### Best Interests and Public Policy

■ Graber argues that Zentz should be denied standing because (1) she disputes whether she and Zentz had the requisite sexual contact, (2) allowing chal-

lenges on Zentz's "meager" allegations will "open the door to challenges to the sanctity of marriage," (3) encouraging men to wait to bring paternity actions will allow them to avoid or delay paying child support, and (4) Zentz has waited too long to bring a paternity action and therefore doing so is "nothing more than harassment" and is contrary to A.C.Z.'s best interests. Graber cites no authority for her argument that a court may deny a father standing if it believes public policy and the child's best interests favor disallowing a paternity action. "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2006). "When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." *Id.* Because standing is controlled by the MPA, and Zentz has standing under the plain language of the MPA, we reject Graber's arguments.

We also conclude that Graber's public-policy and best-interest arguments lack merit. The sufficiency of the sexual-contact allegations is relevant only to whether the district court should have ordered genetic testing under Minn.Stat. § 257.62, subd. 1, which requires allegations of sexual contact. Because allegations of sexual contact are not required to gain standing as a presumed father under Minn.Stat. §§ 257.57, subds. 2(1) and 1(d), the sufficiency of the sexual-contact allegations is irrelevant to the district court's ruling on standing.

Graber's argument that Zentz waited too long to bring his paternity action and long waits are against public policy is contrary to the legislative policy established in Minn.Stat. § 257.57, subd. 2(1). The statute allows an action to declare the existence of a father-and-child relationship presumed under Minn.Stat. § 257.55, subd. 1(d), "at any time." Minn.Stat. § 257.57, subd. 2(1). Graber's characterization of Zentz's action as against A.C.Z.'s best interests and as "nothing more than harassment" is unsupported and ignores her admission that Zentz and A.C.Z. developed a relationship. Graber's final argument that men can avoid support obligations by delay in bringing paternity actions ignores that she could have brought a paternity action under the statute at any time. *See* Minn. Stat. § 257.57, subd. 2(1) (allowing mothers, among others, to bring suit at any time to establish the existence of a father-and-child relationship presumed under Minn.Stat. § 257.55, subd. 1(d), among other paragraphs).

## II.

Zentz seeks conduct-based attorney fees on appeal under Minn.Stat. § 518.14 (2006) and Minn. R. Civ.App. P. 139.06. Zentz argues that Graber's motives in filing the appeal were to harass him, to prevent him from having contact with A.C.Z., and to gain an advantage in future custody proceedings based on the continued disruption in the relationship between Zentz and A.C.Z. Zentz has submitted an affidavit of counsel detailing the costs anticipated in responding to Graber's appeal.

Under Minn.Stat. § 518.14, subd. 1, a court may order need-based or conduct-based attorney fees. *See also Pitkin v. Gross,* 385 N.W.2d 367, 371 (Minn.App. 1986) (concluding that section 518.14 applies to proceedings under chapter 257). A court may order conduct-based fees against a party who "unreasonably contributes to the length or expense of the proceeding." Minn.Stat. § 518.14, subd. 1; *see also Kitchar v. Kitchar,* 553 N.W.2d 97, 104 (Minn.App.1996), *review denied* (Minn. Oct. 29, 1996) (stating that an award of

conduct-based fees on appeal is not warranted when a party presents colorable legal arguments on difficult issues). We conclude that Graber has unreasonably contributed to the length and expense of these proceedings and that a conduct-based award of fees is warranted. Zentz is awarded $5,285.23 in conduct-based fees.

## DECISION

 A man establishes a presumption of a father-and-child relationship under Minn.Stat. § 257.55, subd. 1(d), by alleging that he has received the child into his home and held the child out as his biological child. A man need not establish these allegations by clear and convincing evidence to gain standing. A man making these allegations is authorized to bring an action to declare the existence of the relationship at any time under Minn.Stat. § 257.57, subd. 2(1). Because Graber unreasonably contributed to the length and expense of these proceedings, Zentz is awarded attorney fees on appeal.

**Affirmed; motion granted.**